## Baughman *versus* The Shenango and Allegheny Railroad Company.

In crossing a railroad track at a crossing the horse which plaintiff was driving caught his foot in the space between the rail and the plank on the crossing and fell down on the track. Plaintiff alighted and endeavored for about two minutes to extricate the foot, when a train came along and broke the horse's leg. In a suit for damages the court non-suited the plaintiff invoking the rule that he should have " stopped, looked and listened" before approaching the crossing. *Held*, that the rule was not applicable to the case, that the true question was whether the company was guilty of negligence in allowing the track at the crossing to be in an insecure condition, and that this question should have been submitted to the jury.

November 27th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Mercer county :* Of October and November Term 1879, No. 186.

Case by William Baughman against the Shenango and Allegheny Railroad Company, to recover damages for an injury to a horse and wagon, alleged to have been caused by the negligence of defendants.

The Shenango and Allegheny Railroad crosses the public highway leading from Mercer to Franklin, about two miles distant from Mercer. During the winter of 1877, the crossing at this point was out of repair. The plank on the inside of the rail had become worn or misplaced, so as to leave an open space four and five-eighth inches wide between it and the rail. This space rendered the crossing unsafe to travellers, as it was wide enough to admit a horse's foot, and on account of its depth and shape, it so fastened the foot of the horse that stepped into it, as to render it difficult to extricate his foot without assistance. The crossing remained in this condition for several weeks prior to the day in February 1877, upon which the plaintiff sustained the injury complained of, during which time different travellers had encountered difficulty by their horses' feet becoming fast in the crossing.

Some time in February 1877, the plaintiff had been at Mercer

[Baughman *v.* Shenango & Allegheny Railroad Co.]

and was returning home with his wife in a one-horse buggy. When he approached this railroad crossing, he drove very slowly —bringing his horse almost to a halt. The railroad was visible for a long distance in both directions, but there was no train within sight or hearing. Just as the horse stepped upon the railroad, his foot become fast in the space between the rail and the plank, and in his efforts to withdraw it, he threw himself down upon the track. The plaintiff immediately alighted from the buggy and attempted to loosen his horse's foot by working it back and forth with his hands. He labored in this manner for about two minutes, but with no success. The horse's foot was fastened in such a way that he could not even arise. The plaintiff then told his wife, who had remained in the buggy, to alight and assist him. She alighted from the buggy and looked down the track where she saw the locomotive of a freight train just coming in sight. She then ran down the railroad waving her handkerchief and calling to the engineer to stop, while the plaintiff was still trying to get his horse's foot loose. The train was a heavy one and moved slowly up grade and over the crossing, breaking the horse's leg and otherwise injuring him, and demolishing the buggy and harness. This suit was brought by the plaintiff to recover damages for the loss of the horse, buggy and harness.

At the trial, before McDermitt, P. J., the plaintiff proposed to prove the value of the buggy which was in the possession of the plaintiff on the day of the collision, and which was destroyed by the collision, for the purpose of showing what damage was sustained by plaintiff, by means of the destruction of said property which was in his possession at the time, as bailee.

Defendant objected to above offer because:

1. The evidence in the case shows that the plaintiff was not the owner of the buggy and harness, but was using them that day by the kindness of the owner.

2. Because the testimony does not show that the buggy and harness were destroyed, but only slightly injured, and if the defendant is responsible in damages it could only be for the amount of the same and not for the worth of the harness and buggy.

The court.—"The evidence of the plaintiff and wife thus far shows that the buggy and harness were borrowed from W. H. Reed, and such evidence showing that said Reed is the party who should have instituted suit for the recovery of the damages sustained by such buggy and harness, if any, no evidence will be heard in regard thereto."

The plaintiff having closed his evidence, the defendant moved for a nonsuit, which the court granted, for the reason that the plaintiff did not stop his horse to look and listen for trains before attempting to cross the railroad. A motion was subsequently made

[Baughman *v.* Shenango & Allegheny Railroad Co.]

to take off this nonsuit, which the court refused. This refusal, and the ruling upon the above evidence, were assigned for error by plaintiff, who took this writ.

*S. H. Miller* and *B. Magoffin, Jr.*, for plaintiff in error.—The neglect to stop, look and listen, had no connection with the accident, and could not have contributed to it. The law did not command plaintiff to stop, look and listen, in order to avoid the danger of a defective crossing, and therefore his disobedience could not be declared contributory negligence *per se*, as it is in cases where the injury results directly from the cause which he was warned to avoid. All the plaintiff seeks to recover is damage for whatever injury he sustained by reason of his horse becoming fast in the crossing. The horse was thrown down, and his shoe pulled off before the engine struck him. This was some injury, and entitled the plaintiff to nominal damages, at least. His right of action was, therefore, complete before he was injured by the train, and it was wrong to nonsuit him. The defendant was liable for all damages which were the direct result of the defect in the crossing, and if such defect was the immediate cause of the injury the plaintiff sustained from the train, he was also entitled to recover. This was a question of fact under the evidence, and ought to have been submitted to the jury.

*S. Griffith* and *Stranahan & Mehard*, for defendant in error.— The rule that a person approaching a railroad crossing must stop, look and listen, is based upon an absolute necessity of stopping as a safeguard to the travelling public, and also a duty to the traveller himself.

If this rule is not applicable to this case, we could not imagine a case to which it would apply. Here there was a collision, and this fact showed the necessity of stopping; and, as in every case of collision the rule must be an unbending one, the failure of the plaintiff to do so in this case bars his action for damages, on the ground of contributory negligence.

Mr. Justice PAXSON delivered the opinion of the court, January 5th 1880.

The first assignment of error is not sustained. The evidence offered to show the value of the harness and buggy was properly rejected. The plaintiff had already testified that they belonged to W. H. Reed, who had loaned them to him. It was not error therefore for the learned judge to say, that Reed was the proper person to sue for the alleged injury to said articles. A recovery by the plaintiff would have been no bar to a suit by the owner.

The second and third assignments present a graver question. The court below nonsuited the plaintiff upon the ground that he did not stop and look and listen before attempting to cross the

11 NORRIS—22

[Baughman *v.* Shenango & Allegheny Railroad Co.]

track. The rule invoked is a valuable one, and sustained by several well considered cases, among which may be mentioned, Railroad Company *v.* Heileman, 13 Wright 60 ; Hanover Railroad Co. *v.* Coyle, 5 P. F. Smith 396, and Pennsylvania Railroad Co. *v.* Beale, 23 Id. 504. We do not propose to depart from this principle nor to weaken its force. We are unable to see its applicability to this case, however. The injury, as developed by the plaintiff's testimony, was not the result of a failure to observe the rule. Had he stopped, looked and listened, it is not probable he would have seen or heard the train, for the reason, that it was too far off to have been patent to any of the senses. The trouble was, that the horse which plaintiff was driving, caught his foot in the space between the rail and the plank at the crossing, and fell down on the track. The plaintiff got out of the buggy and endeavored to get his horse upon its feet again. But this was not an easy task, as one of its feet was fast. After working unsuccessfully in this manner for about two minutes, he told his wife to get out of the buggy. She did so, and shortly thereafter heard the cars coming, upon which she ran up the road to meet them, signaling them at the same time to stop. The warning came too late, and the train passed over one leg of the horse, and damaged the harness and buggy to some extent. There was evidence that the track was out of order at the point where the accident occurred ; that the flange way was too wide—one witness says four inches and five-eighths—and that other horses had been caught in the same way before. The true question in the case therefore was, whether the company were guilty of negligence in allowing the track at the crossing to be in an insecure condition, and this question should have been submitted to the jury.

Judgment reversed, and a *venire facias de novo* awarded.