# Bard, Appellant, v. Philadelphia and Reading Railway Company.

*Negligence—Contributory negligence—Railroads—" Stop, look and listen"—Province of court and jury.*

In determining the question of the contributory negligence of a plaintiff in a grade crossing case, it is not only necessary to consider the plaintiff's conduct, but also that of the defendant. Both parties have the right to be at the crossing, and each has the right to act with the belief that the other will exercise his right at the place, in the manner and way his duty requires him to do. The duty of the company at a grade crossing is to run the locomotive at a rate of speed, not dangerous to pedestrians exercising due precaution. The pedestrian is justified in believing that the railroad employees will perform their duty in this respect, and can act on this belief without any imputation of negligence. If the locomotive approaches the crossing at such a reckless rate of speed as to prevent the traveler on the highway from protecting himself by the use of sight and hearing, in the position he has placed himself, and which would have been safe had the defendant used the care demanded of it, the plaintiff cannot be charged with negligence.

In an action against a railroad company to recover damages for personal injuries sustained at a grade crossing, the case is for the jury where the evidence for the plaintiff, although contradicted in every essential point, is in effect that the plaintiff approached the crossing on a very foggy morning before daylight, that she stopped about twenty feet from the track, from which point on a clear day she could have seen an approaching train for two hundred and fifty feet, that she looked and listened but saw and heard nothing, that she then proceeded slowly, and when in the act of stepping on the track was struck by a locomotive which was running very fast and approached the crossing without giving any signals.

Argued March 5, 1901. Appeal, No. 67, Jan. T., 1901, by plaintiff, from judgment of C. P. Berks Co., Aug. T., 1900, No. 127, on verdict for defendant in case of Mary E. Bard, Widow of John Bard, v. The Philadelphia and Reading Railway Company. Before McCollum, C. J., Mitchell, Fell, Brown and Mestrezat, JJ. Reversed.

Trespass to recover damages for personal injuries. Before Endlich, J.

The facts are fully stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant.    Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*H. P. Keiser* and *J. H. Jacobs*, with them *William H. Livingood*, for appellant.—The case was for the jury: Davidson v. Lake Shore, etc., Ry. Co., 171 Pa. 522; Arnold v. Philadelphia & Reading R. R. Co., 161 Pa. 1; Howett v. Phila., Wilmington & Baltimore R. R. Co., 166 Pa. 607; Laib v. Penna. R. R. Co., 180 Pa. 503; Muckinhaupt v. Erie R. R. Co., 196 Pa. 213.

*Jefferson Snyder*, of *Baer, Snyder & Zieber*, for appellee.—This case is ruled by Hauser v. Central R. R. Co. of N. J., 147 Pa. 440.

OPINION BY MR. JUSTICE MESTREZAT, April 1, 1901:

The plaintiff, a widow of forty-seven years of age resided on north Third street in the city of Reading.  She spent the night of November 23, 1899, at her son's house on Pear street in the city and left there about 5:30 o'clock the next morning to go to her home.  Her route lay along Pear, Elm, Second and Walnut streets to Third street.  When she arrived at Walnut street, she walked along the north side of it.  The main track of the West Reading Branch of the Philadelphia and Reading Railway and a siding to Laurer's brewery cross Walnut street a short distance west of Third street which runs north and south and makes a right angle with Walnut street.  The distance between the two tracks on the sidewalk on the north side of Walnut street is about twenty-six feet.  Walnut street is forty feet wide between the curbs.  Mrs. Bard testifies that she walked slowly on Walnut street and that she stopped six feet beyond the Laurer siding which was about twenty feet west of the main track, and there looked and listened.  She says she saw and heard nothing, and thinking it was all right, walked on when, as she was about putting one foot across the first rail, she was struck by an engine.  "It was just like a flash," she says.  Her right arm, right leg and ankle of her left foot were broken and she was otherwise injured.  She further testifies

that the morning was foggy and very dark; that she could not see very far on account of the fog; that no bell was rung nor whistle was blown as the engine approached the crossing; that she knew nothing about the headlight on the engine. On cross-examination she said, that on a clear day she might be able to see 250 feet from where she stopped in the direction in which the train approached the crossing; that she could see the switch box dimly which, according to other testimony, was about four feet square and six feet high, unlighted and standing at the northwest corner of Third and Walnut streets.

A tender was attached to the locomotive, and at the time of the accident there were six persons on the locomotive, a conductor, an engineer, a fireman and three brakemen.

Philip Sproesser, a witness for the plaintiff, testifies that the morning was very foggy and that it was not daylight when the plaintiff was struck; that he could not see across Walnut street and could not see the switch box until within ten feet of it; that he had just crossed the track when the engine passed him like a flash and was running very fast; that no whistle was blown nor bell rung; that after walking along the south side of Walnut street to the corner of the stocking factory—about twenty feet from the track—he heard the screeching noise of the brakes on the engine, turned round and saw the engine stop just above the entrance to Laurer's brewery yard and walked up to see what was wrong.

William Shunk one of plaintiff's witnesses testified that the engine passed him, 600 feet from the crossing as he was going in the same direction; that there was no signal from the whistle or bell as it passed him; that it was dark, foggy and a little mist was falling.

Louis Peltzer testified that it was dark, foggy and raining a little that morning at the time of the accident; that he was walking east along the north side of Walnut street and saw an object in front of him which he imagined to be a person; that he saw the engine strike the person when he was about twenty feet behind her; that he picked the plaintiff up near a fence, two or three steps west of the railroad track at the wagon crossing and about sixty feet north of Walnut street; that the engine continued beyond that point; that it was running very fast and gave no signal as it approached the street.

Such in part is the testimony adduced by the plaintiff on the trial on which she bases her right to submit the case to a jury. On the part of the defendant, the engineer, fireman and two of the brakemen who were on the engine that morning together with two other parties were called to testify as to the occurrences at the time of the collision. Every material part of the plaintiff's testimony is flatly contradicted by the evidence of the defendant. If these witnesses are believed by the jury, the accident occurred in daylight when the plaintiff, before crossing the railroad, could have seen several hundred feet in the direction of the approaching locomotive; that it was running up grade, puffing loudly and at the speed of only four or five miles an hour; that the bell was rung continuously from Spruce street to the place of the collision. It is denied that it was foggy that morning, and the testimony tends to show that a brilliant headlight was on the engine by reason of which and the arc light at the intersection of Third and Walnut streets, the plaintiff could have seen the distance of a square from her.

The trial judge was of the opinion that under the evidence submitted the plaintiff was so clearly guilty of negligence contributing to her injuries that as a matter of law he was justified in withdrawing the question from the jury.

There are certain facts in the case established by the testimony adduced by the plaintiff if it is believed by the jury. Mrs. Bard's route home from her son's residence lay along Walnut street and she was passing over the defendant's tracks on the sidewalk of that street when she was struck by the defendant's locomotive. The accident occurred at an early hour in the morning. It was very dark and foggy and for this reason the plaintiff could see but a very short distance in any direction. She stopped about twenty feet west of the track from which point on a clear day, she could see an approaching train for 250 feet. She looked and listened but saw and heard nothing. She then proceeded slowly along the sidewalk and when in the act of stepping on the track was struck by the locomotive. It was running very fast and approached the crossing without giving any signals. The plaintiff did not see the headlight and so far as the testimony introduced by her goes, the jury would have been justified in finding that there was none on

the engine that morning. Her ability to hear an approaching train would be for the jury.

Under this testimony, the case could not be withdrawn from the jury. Had the plaintiff exercised her senses of sight and hearing to the acutest degree, yet it would not necessarily have prevented the accident. The rapidity at which the locomotive was traveling at the time of the accident becomes material on the question of the plaintiff's negligence. As we have seen, the plaintiff's testimony showed it was running very fast—like a flash. The rate of speed, therefore, might have been twenty miles or greater per hour as claimed by the plaintiff. This would be running at least thirty feet per second and crossing Walnut street in less time than a second and a half. This being true, and the conditions prevailing at the time being such as to prevent her from seeing possibly not more than ten feet, if credence is given the testimony of some of plaintiff's witnesses, the jury would have been justified in finding that had she looked towards the approaching engine she could not have seen it in time to protect herself. The law does not require a vain thing, and if the exercise of her senses would not have availed her under the circumstances, the fact whether she did look or not immediately prior to stepping on the track becomes immaterial in determining the question of her contributory negligence.

In determining the negligence of a plaintiff in a case of this character, it is often necessary not only to consider her conduct on the occasion but also that of the defendant. This was at the crossing of a street where both parties had the right to be. Each party had also the right to act with the belief that the other would exercise his right at the place in the manner and way his duty required him to do. The duty of the defendant company's employees in charge of the locomotive was that of care required at a grade crossing, and to run the locomotive at a rate of speed not dangerous to pedestrians exercising due precaution, who might have occasion to cross the tracks, either in daylight or darkness, with a clear atmosphere or a dense and foggy one. The plaintiff was justified in believing that the defendant's employees would perform their duty in this respect and she could act on such belief without any imputation of negligence. If, therefore, the locomotive approached the crossing at such a reckless rate of speed as to prevent her from protect-

ing herself by the use of her sight and hearing in the position she had placed herself and which would have been safe had the defendant used the care demanded of it, the plaintiff cannot be charged with negligence. It would not be a failure to perform a duty under the circumstances, hence not negligence.

Nor could the plaintiff be charged with negligence if, under the circumstances of the case as shown by her evidence, the high rate of speed of the locomotive bewildered and disconcerted her so that she had not sufficient control of herself at the time the engine was seen by her immediately prior to stepping on the track to determine in which direction to step for safety. The collision could not under such circumstances be attributable to her action or to her failure of duty to avoid a perilous position, but must be imputed to the negligence of the defendant in running its locomotive at an excessive and dangerous rate of speed. Judge HARE well expresses this view in Hagan v. Phila. & Trenton Railroad Co., 5 Phila. 179. He says: " Conceding it to be true, as the defendants contend, that he must have discovered his danger in time to have stood still until the locomotive had passed, it may yet, with equal plausibility, be urged, that the reason why he did not do this was that the imminence of the approaching peril bewildered his mind, and rendered him incapable of judging which way to turn for safety. No one has intimated that he meant to commit suicide, and we must therefore suppose that he was surprised by his fate, instead of wilfully courting it. . . . In this view of the case his death was caused, not by his own negligence, but by a want of the quickness or presence of mind necessary to estimate and avoid the peril in which he was placed by the high rate of speed of the defendant's train."

We have no disposition to relax the rule requiring a party to exercise due care in approaching a grade crossing. He must perform this duty or take the responsibility for his negligence. If he step in front of an approaching engine, when by the exercise of his senses he could have heard and seen it and thus protected himself, his act is negligence and the court will so declare it. But when the party does what is thus required of him and a collision occurs, then unless the accident happens without the fault of the company, it must answer for its disregard of duty. As we have said, both parties have rights at a

street crossing and it is equally true that both have duties to perform towards each other.

Mrs. Bard did not walk rapidly or rush on to the track. She approached it slowly. She thus had an opportunity to do what the law required of her on the occasion. Her sight and hearing were not defective, and her age and physical condition did not prevent her from performing her duty. The question then is could she by exercising due precaution have prevented the collision? The plaintiff alleges she could not, and assigns as a reason that owing to the great rapidity at which the engine was traveling, the fog and darkness of the morning prevented her seeing and hearing the approaching engine at a sufficient distance to warn her not to attempt to cross the track. How fast the locomotive was traveling and whether it could have been seen and heard by the plaintiff before she stepped on the track, were, under the circumstances, questions for the jury.

While a jury might be slow to believe that her allegations are true, and especially so under the defendant's testimony, yet the credibility of the witnesses and the facts leading up to, and causing, the collision must be determined by that body.

In our determination of the question raised on this record, we have not considered the defendant's testimony. That is for the jury on a trial of the cause. All we decide is that the question of the plaintiff's negligence like that of the defendant's negligence was for the jury under the testimony produced by her and not for the court.

The assignments of error are sustained, the judgment is reversed and a venire facias de novo is awarded.