# T. M. MONROE v. CHICAGO & ALTON RAILROAD COMPANY, LOUISIANA & MISSISSIPPI RAILROAD COMPANY and JOHN A. BROWN, Appellants.

### In Banc, April 2, 1923.

1. **ARGUMENT TO JURY: Inflammatory Remarks: Violation of Law.** In an action for damages against a railroad company, brought by a traveler whose automobile was struck by a train, alleged to be running at excessive speed, as he was attempting to cross the tracks near a station, remarks by plaintiff's attorney in his argument to the jury that "no man, no corporation, no individual beneath the shining sun, has any right to openly and flagrantly violate the law, and when as a result of that violation the mangled forms of citizens are strewn upon their tracks, come before a jury of their country and say, 'Yes, I have violated the laws, I spit upon them, I violate them not once, but five times over, and what are you going to do about it?'" are not calculated to throw any light on the issues being litigated, nor of a quality to aid the jury in a dispassionate consideration of the case, but being intemperate and inflammatory and calculated to arouse the prejudice and passion of the jury, an objection thereto should be sustained, and the jury admonished to disregard them.

2. **NEGLIGENCE: Contributory: Failure to Look for Known Fast Train: Excessive Speed.** Where the traveler knew that the fast-mail train which struck his automobile as he attempted to cross the track ahead of it did not stop at the station and did not observe the ordinance forbidding train speed in excess of eight miles per hour, and knew that freight cars standing on the derail track and trees along the right-of-way obstructed his view of the oncoming train, with whose schedule he was well acquainted, and testified that he drove across the tracks without stopping to look and that when the front wheels of his automobile were on the near rail of the main track he first saw the train at a distance of one hundred to one hundred and fifty feet, he cannot recover for his consequent injuries. The law imperatively required him to look carefully at a convenient distance from the crossing and while he was yet in a safe place before venturing upon it, if by looking, he could have seen the on-coming train and thereby have avoided injury.

3. ———: ———: ———: **Speed in Excess of Ordinance Rate: Failure to Give Statutory Signals: Reliance Upon Defendant's Duty to**

Observe. If there is no evidence that the auomobile traveler re-lied upon the defendant's statutory duty to give signals as its train approached the crossing, or upon the train's observance of the ordinance forbidding a speed in excess of eight miles per hour, but on the contrary he knew that it was a fast-mail train that habitually disregarded the ordinance, a failure to give the statu-tory signals or to observe the ordinance does not abrogate the rule of contributory negligence. Notwithstanding such failure, it is still his duty to look, while yet in a place of safety, before ven-turing to cross the track upon a public street, if by looking he can see the on-coming train, and by seeing delay entering upon the track until the train has passed, and his failure to be vigilant and watchful under such circumstances is negligence *per se*.

4. ――――: ――――: ――――: Noise of Automobile: Obstruction of View. Notwithstanding plaintiff's automobile was making so much noise that he could not hear the on-coming train or its crossing signals, and notwithstanding freight cars on a side track obstructed his view in the opposite direction, if there was nevertheless a place of safety from which he could have seen the on-coming train in ample time to have avoided the injury by stopping, and he neither looker nor listened, nor made any attempt to stop, but indifferent to his danger he heedlessly drove on, he assumed the risk of being struck, and was guilty of negligence as a matter of law.

5. ――――: ――――: Automobile: Statutory Rule. The statute (Laws 1911, p. 330, sec. 12, par. 9) requires the driver of an automobile, upon public roads, streets, avenues, alleys, highways or places much used for public travel, to exercise the highest degree of care that a very careful person would use under like circumstances, and that is not a rule of evidence, but a rule of law, peremptory, absolute and unbending, that may not be ignored by court or jury, and where the case rests upon plaintiff's evidence alone there is no fact for the jury to find; and where his evidence shows that, his view being obstructed, he could neither see nor hear the approaching train, this statutory rule required him to stop his automobile while in a place of safety, and if he did not stop, but drove on, heedless of the danger, and was struck, at a public street crossing, by the on-coming train, he cannot recover for his consequent injuries.

6. STARE DECISIS: Second Appeal. The decision on the first ap-peal does not constitute the law of the case, where the evidence at the trial which resulted in the judgment from which the instant appeal is taken was materially different from what it was at the former trial.

Appeal from Monroe Circuit Court.—*Hon. Ernest S. Gantt,* Judge.

REVERSED.

*A. C. Whitson, Alpha N. Brown* and *Charles M. Miller* for appellants.

(1)   Plaintiff's negligence in not avoiding collision with the train at the crossing, as a matter of law bars recovery and the judgment herein should be reversed. Reeves v. Chicago & Alton, 251 Mo. 169; Vandeventer v. Chicago & Alton, 177 S. W. 834; Underwood v. West, 187 S. W. (Mo. App.) 84.   (2)   The trial court erred in admitting on behalf of plaintiff, in rebuttal, evidence relating to sporadic instances of the electric crossing bell ringing continuously and not ringing at times between the accident and the installation of the bell, seven years previous to the accident.   Hamburger v. Rinkel, 164 Mo. 398, 407; Wojtylak v. Coal Co., 188 Mo. 289; Scharff v. Grossman, 59 Mo. App. 199.; Magnet v. O'Neill, 51 Mo. App. 35; St. Louis Gaslight Co. v. Amer. Fire Ins. Co., 33 Mo. App. 348, 375.   (3)   The trial court erred in refusing to admit before the jury evidence relating to the validity of the alleged speed ordinance.   (4)   The trial court erred in giving plaintiff's instructions numbered 2 and 5, relating to the alleged speed ordinance, which peremptorily instructed the jury that the alleged speed ordinance was a valid and binding ordinance upon the defendants, defendants asserting that said alleged speed ordinance was not a valid and binding ordinance upon defendants, and that said ordinance was unreasonable, an interference with interstate commerce and unconstitutional and void.   (5)   The trial court erred in giving plaintiff's instruction numbered 9, which instructed the jury that if they found a verdict against the Chicago & Alton Railroad Company, they would in such event also find a verdict against the other two defendants, the Louisiana & Missouri River Railroad Company and Engineer John A. Brown.   (6)   The trial court erred in refusing defendant's instruction reading: "The court instructs the jury that if they believe from the evidence the electric

crossing bell was ringing in time to have warned plaintiff Monroe, of the approaching train so as to have avoided collision therewith, and that he could have heard the bell in the exercise of the highest degree of care and caution of a very careful driver by listening and did not heed the warning of the bell, then he was guilty of negligence and can not recover in this case, and your verdict will therefore be in favor of the defendants, irrespective of whether or not the train exceeded the speed ordinance.''

*Abbott, Fauntleroy, Cullen & Edwards* and *Rogers & Buffington,* for respondent.

(1) The trial court ruled properly in submitting this case to the jury, because: (a) This court, in the same case and on the same state of facts, has held that plaintiff was not guilty of contributory negligence as a matter of law. Monroe v. Chicago & Alton, 280 Mo. 483; Alexander v. Frisco Ry. Co., 233 S. W. 48. (b) There being no material change in the evidence in the present trial from the evidence in the former trial, the decision of this court on the former appeal constitutes the law of the case and should be followed. Baker v. Railroad Co., 147 Mo. 149; Keith v. Keith, 97 Mo. 231; Hickman v. Link, 116 Mo. 123; Gwin v. Waggoner, 116 Mo. 151. (2) The ruling of the trial court of which complaint is made is clearly correct, because: (a) In order to rebut testimony offered by one party tending to show that an inanimate object such as an engine or an electric signal bell never failed to act and was so construed that it could not fail to act under a given state of facts, the other party may prove instances where the same instrumentality, under similar conditions, failed to act, and such testimony is not collateral. 1 Jones on Evidence, sec. 171, pp. 880, 884; Ross v. Boston & Worster Railroad Co., 6 Allen (Mass.) 87; Loring v. Worchester Ry. Co., 131 Mass. 469; Touhy v. Columbia Steel Co., 61 Ore. 527; Shea v. Fabries Co., 163 Mass. 463; Bemis v. Temple, 162 Mass. 342; Reeve v. Dennett, 145 Mass. 23; Chicago Anderson P. B. Co. v. Reinneiger, 33 Am. St. 257, 140 Ill. 334; Orcutt v. Cent.

Bldg. Co., 214 Mo. 53; Coale v. Railroad Co., 60 Mo. 227; Lester v. Railroad Co., Id. 265; Tapley v. Railroad, 129 Mo. App. 92; Matthews v. Railroad, 142 Mo. 645. (b) If one party introduces evidence which might be inadmissible under the strict rules, the other party is entitled to introduce evidence on the same matters and thereby rebut the testimony of his adversary, and in such case the party who first introduces such evidence cannot assign error because the court admitted testimony in rebuttal; and this is true even though the testimony offered by both parties is immaterial and collateral. Rebuttal evidence may pursue the same scope as that developed by the testimony it is designed to rebut. 22 C. J. 195; 10 R. C. L. sec. 103, p. 936; Sharp v. Hall, 86 Ala. 110, 11 A. S. R. 28; De Forge v. Railroad Co., 178 Mass. 59, 86 A. S. R., 464; Parker v. Atlantic C. L. Railroad, 133 N. C. 335, 63 L. R. A. 82; Bickley v. Commercial Bank, 39 S. C. 281, 39 A. S. R. 721; Powell v. Railroad Co., 229 Mo. 246; Crawford v. Stock Yards Co., 215 Mo. 394; Enyeart v. Peterson, 184 Mo. App. 519; Hays v. Metropolitan St. Railway, 182 Mo. App. 393; Hales v. Raines, 162 Mo. App. 46; Baker v. Pulitzer Pub. Co., 103 Mo. App. 54; Hill v. Seneca Bank, 100 Mo. App. 230. (3) The court did not err in refusing to hold that the speed ordinance was invalid or in refusing to permit the jury to hear evidence touching its invalidity because (a) The doctrine is uniformly supported that the question whether an ordinance is reasonable is one of law for the court. 2 McQuillin on Municipal Corporations, p. 1583, sec. 729; Zumwalt v. Air Line, 71 Mo. App. 680; City of St. Louis v. Weber, 44 Mo. 550; Barton v. Odessa, 109 Mo. App. 76; (b) This court has held not only that similar ordinances but this specific ordinance of this particular town is valid and affirmed a judgment in the amount of fifteen thousand dollars because of its violation. Stotler v. C. & A. Railroad, 200 Mo. 109, 204 Mo. 619, 280 Mo. 485. (4) There was no error in instructing for a verdict against both defendants. Where the undisputed and admitted testimony shows all the defendants are liable, the verdict

should be against all or none. Whitaker v. Railroad, 252 Mo. 460; McGinnis v. Railroad, 200 Mo. 348. (5) The court did not err in refusing to give the second instruction relating to electric crossing bell. (a) Instruction numbered 9 fully covered the point in the case, and was really too favorable to the defendant. (b) The instruction refused contained unwarranted assumptions of fact and was erroneous in declaring that a failure to heed the warning of the bell constituted contributory negligence as a matter of law. (c) Each of said instructions might well have been refused, because they singled out particular facts and permitted the defendant to substitute the ringing of an electric bell for the signals required by statute.

HIGBEE, C.—This is an action for damages for injuries sustained by plaintiff when his automobile was struck and demolished by one of defendant's passenger trains at the crossing of Pine Street in the village of Laddonia, Audrain County, Missouri, on July 17, 1913, Two juries disagreed. On the third trial the verdict was for the defendants. On appeal this was reversed and a new trial ordered. See opinion in 280 Mo. 483, 491, 219 S. W. 68, for a statement of the facts as they appeared on the first appeal. On a re-trial the verdict was for the plaintiff in the sum of $7950, for personal injuries and damages to his automobile.

The railroad runs from east to west through the village. The station is on the north side of the main track, and east of Pine Street, which runs north and south through the village. There is a switch or siding on the south side of the main track, which siding is about one-half mile long. Front Street is on the south side of the right of way. There are structures, buildings and trees on the south side of' the siding, which obstruct the view to the east as one approaches Pine Street crossing from the south.

Plaintiff, a physician, had lived in Laddonia some years, having a drug store and office about one block

east of Pine Street crossing and south of defendant's station. He was familiar with the surroundings and knew the schedules of defendant's trains. He testified "there was a regular mail train that came through every morning, one mail train, and I presume this was the same train." He did a general practice in the country and often drove his automobile over this crossing and knew of the obstructions referred to. On the morning of the accident he drove his car westward on Front Street, and turned to the north to cross the railroad on Pine Street. He testified that the derail was about twenty or thirty feet from the middle of the street, and that he drove within twenty-five feet of the box cars; that he looked attentively both east and west; could see no train coming from the west; "and my attention was all directed to the east, being obstructed by those box cars, and there was no crossing bell ringing and I suppose that everything was clear and I ventured on across the C. & A. crossng."

"Q. Now, after getting far enough north so that your line of vision would clear the box cars where was the front wheels of your car? A. Well, when I got up so I could see diagonally across the end of this box car that was standing at the derail I could see down the main line something like 100 or 150 feet, and at that time my front wheels of the automobile were practically on the south rail of the main tract. . . .

"Q. And what gear were you running in? A. Intermediate speed.

"Q. About what rate of speed did you cross there? A. About four miles an hour.

"Q. Now, when you got so that your line of vision cleared the cars did you see any approaching engine or train? A. After I got in the position just stated, why, about 100 or 150 feet I saw this engine coming, yes sir.

"Q. And your car was then where with reference to the rails upon which this engine was running? A. The front wheels were on or about the south rail of this main track on which this train was coming.

"Q. Now, prior to that time had you heard any-

thing of any train coming from the east or west? A. I never heard a thing, no, sir.

"Q. Had you been able to see anything prior to that time, any train coming from the east. A. No, sir, I could not. . . . .

"Q. What did you attempt to do? A. I tried to go forward. Increased the speed of my car, and tried to get off the track as quick as possible.

"Q. Could you back as quick as you could go forward, and clear the track? A. No, sir. I would have had to have reversed my gears and I figured I could come nearer getting across the track by going ahead than by backing up.

"Q. Well, did you get by? A. Except the rear of the car.

"Q. The part you were sitting in? A. Yes, sir; it missed my back about something like eighteen or twenty inches I should judge.

"Q. And struck what part of your car? A. Tore the entire rear end out. Struck about right at the hub of the right hind wheel, and just tore the entire rear end out, top and all.

"Q. Then if you had been able to move some two or four feet farther you would have cleared the track? A. Yes, I think two feet would have cleared me possibly."

On cross-examination plaintiff was asked as to his testimony on a former trial of the case at Fayette, defendant's counsel reading certain questions and answers thereto by plaintiff from plaintiff's abstract of the record on the first appeal;

"MR. MILLER: I will go back here and get the connection, at the bottom of page 247 (reading); I will ask you if over at Fayette you didn't testify—I will ask you if these questions were asked you and these answers given at that time, taking depositions: 'Did you observe the approach of this train?" and the answer, 'No, sir.' 'Didn't see it at all?' and the answer, 'No, sir.' 'Never

did see it?' and the answer, 'No, sir." Did you answer those questions that way, Doctor? A. I don't remember.

"Q. Over at Fayette.

"MR. CULLEN: We object to that. . . .

"THE COURT: As the court understands the examination now, the question is predicated upon the abstract of record that went to the Supreme Court in this case?

"MR. MILLER: Yes, sir.

"THE COURT: And appertaining to testimony given in another trial of this case? . . .

"MR. CULLEN: Now, another reason. He has never asked him about the train. He has asked him about remembering where he was going, and then he switches.

"THE COURT: It is disconnected from his last examination, that is true. Now, what statement do you contend that this witness has made that is contradictory to the statement there.

"MR. MILLER: He testified that he drove up there to the track and, as I understand, he looked down the track and he saw the train 100 or 150 feet east of the crossing. Now, I propose to show that he testified over at Fayette that he never did see the train until it struck him.

"THE COURT: Objection as to this particular question overruled.

"MR. MILLER: Q. Didn't you answer that question that way over at Fayette? A. I don't remember of answering it that way.

"Q. Is that the best answer you can make to the jury; you don't remember of answering it that way? A. I don't remember of answering that question that way. I absolutely saw the train before it struck me, 100 or 150 feet away.

"Q. Don't you know that after you dismissed the case over there and brought it back here you proceeded upon a different theory? A. I don't know that I did.

"Q. And then is when, for the first time, you said that you saw the train 100 to 150 feet before it got to the
297 Mo.—41

crossing? A. I did see it 100 or 150 feet away before it struck me, there is no question about it. . . .

"Q. Reading further—

"MR. CULLEN: What page is that?

"MR. MILLER: 248. I will go on further: Q. 'Did you testify now that you heard no bell at that time?' And the answer, 'Yes, sir; no bell.' 'Now, did you observe the approach of this train?' And the answer, 'No, sir.' 'Is that correct?' And you gave the answer, 'I don't remember?' A. I don't remember how I testified at Fayette, Mr. Miller. Whatever I testified was the best of my recollection."

When defendants were offering their testimony, the following occurred.

"MR. MILLER: I want to read from Doctor Monroe's testimony over at Fayette, record—

"MR. CULLEN: Wait a minute. We object to that statement. You will not read from Doctor Monroe's testimony at Fayette.

"THE COURT: Do you mean at the trial here?

"MR. MILLER: Yes, sir, as to his interrogation as to what he testified over at Fayette.

"THE COURT: Proceed.

"MR. MILLER: I will ask you if over at Fayette you didn't testify—I will ask you if these questions were asked you and these answers given at that time. Page 247: 'Did you observe the approach of this train?' and the answer, 'No, sir.' 'Didn't see it at all?' And the answer, 'No, sir.' Did you answer those questions that way? A. I don't remember. Q. Would you say that you did not? A. I wouldn't say I did or I wouldn't say I did not. It has been so long. Q. If you did answer it that way it is correct? A. I don't think I answered it that way. Q. Well, your attorneys have a copy of the transcript there? A. I may have answered it that way and I may not. I don't remember. Q. I will go on further: 'Did you testify now that you heard no bell at that time?' And the answer, 'Yes, sir; no bell.' 'Now, did you observe the approach of this

train?' And the answer, 'No. sir.' Is that correct? A. I don't remember. Q. What? A. I don't remember.''

I. Appellants complain of improper remarks by plaintiff's counsel in his closing argument to the jury. The record reads:

''MR. CULLEN: I am talking about a situation that results necessarily from rapid running without giving notice. You know it. You know it is true, as certain as daylight. You see that street over there. That is but a public street, men come and go. Now, you start an automobile down that street, I don't care whether it is giving signals or not, but you start an automobile down that street going at the rate of over sixty miles an hour, and what do you expect and what would those who are on the side expect? Why you would say at once that is dangerous to life and limb, wouldn't you? Everybody would say that. We all know it. Human experience shows it. And as a result of that the law, made to protect everybody, says that those death-dealing and heavy instruments that run upon settled tracks shall move, when they move where people do congregate, at a rate of speed so that they will not leave the injured in the wake of their tracks. That is what that law means, and all it means. Now, I said in the beginning, gentlemen, that every man had a right to his form, his strength, his lungs, and his hands and his legs, unless by its own act he forfeits it. I go a step farther: No man, no corporation, no individual beneath the shining sun, it matters not what impress necessity may employ them, has any right to openly and flagrantly violate the law and when they have violated the law and as a result of that violation the mangled form of citizens is strewn upon their tracks to come before a jury of their country—

''MR. MILLER: We except to that argument as improper and not legitimate argument and ask the court to rule upon it.

''THE COURT: The objection is overruled. . . .

*Argument to Jury.*

"MR. MILLER: We except.

"MR. CULLEN (continuing): come before their fellow-citizens and say, 'Yes, I have violated the law, I spit upon them, I violated them not once but five times over, and what are you going to do about it?'

"MR. MILLER: We object to that argument as not proper argument.

"THE COURT: Overruled.

"Defendants except."

"Trials before juries ought to be conducted with dignity and in such a manner as to bring about a verdict based solely on law and the facts. Hence reckless assertions unwarranted by the proof and intended to arouse hatred or prejudice against a litigant or the witnesses, are condemned as tending to cause a miscarriage of justice." [Beck v. Railroad, 129 Mo. App. 7, 24, per GOODE, J.; 38 Cyc. 1498, 1499.]

It is apparent the remarks complained of, which had the sanction of the court, were not calculated to throw any light on the litigated issues, nor were they of the quality or character to aid the jury in a dispassionate consideration of the case. On the contrary, they were intemperate and inflammatory and well calculated to arouse the passions and prejudices of the jury. Two juries had disagreed; one had found a verdict for the defendant. The verdict in this instance was signed by ten jurors. The learned trial court should have sustained the objections to the remarks complained of and admonished the jury to disregard them.

II. On the trial at Fayette, plaintiff testified he never saw the train until it struck his automobile; in other words, it was like a bolt from a clear sky. In the opinion of this court on the first appeal, in stating the facts, it is said: "Plaintiff did not commit himself to the crossing until the front of his car was very near the track, and then only when he saw no approaching train and saw enough of the track to make it clear beyond doubt that a train run-

False Testimony.

ning at anything like ordinance speed could not reach the crossing before he had passed safely over it." [280 Mo. l. c. 495.] On the làst trial, after his attention was called to his testimony at Fayette, he repeatedly testified he saw the train at a distance of 100 to 150 feet. These statements are unexplained, bald contradictions on a vital point. It was shown beyond question by witnesses for both parties that one on the main track at the crossing had an unobstructed view to the east and could have seen a train for at least four miles. Plaintiff's testimony on one or the other occasion was obviously false and has no probative value. In Steele v. Railroad, 265 Mo. 97, l. c. 116, FARIS, P. J., said:

"Neither an attorney nor his client, the litigant, ought to be allowed to play fast-and-loose with courts. If the trial of a lawsuit is for the purpose of ascertaining the truth and applying the law to that truth, so that the judgment which the law gives upon a certain state of facts may be rendered in the cause, it would be lamentable indeed if a brazen lack of candor should in the hands of fair and just men stamp the alleged truth found as being frankly suspicious. Courts are, in theory at least, forums established for the discovery and determination of the ultimate facts; so they ought not to be used as hotbeds for the germination and promotion of perjury. No litigant in his own sole case ought to be heard by a court, without some explanation or excuse, to deny to-day what he solemnly swore was true on yesterday. This excuse (surely as to diametrically contradictory testimony given in the same trial of the same case) ought to be sufficient as a matter of logic and of law to raise a debatable question in the minds of reasonable and disinterested men. When such explanation of mistake or oversight or ignorance or misunderstanding or inadvertence or illness affecting memory, comes in, clearly the rule is, as we have seen, that the party-witness is not concluded and the jury may resolve the truth of the case. . . .

"But when no explanation or excuse for the variance

is given, as in the instant case, thie matter of the probative effect of such bald contradictions ought to be left to the court to be passed upon as a matter of law. What in such case is there for a jury to pass on?"

Defendant's demurrer to the evidence should have been sustained.

III. We have set out plaintiff's testimony on the last trial as to how the collision occurred. He knew the train that struck his automobile was a fast-mail train that made no stop at Laddonia. He knew that neither that train nor any other fast through train Contributory observed the eight-mile ordinance. He Negligence: knew of the freight cars at the derail on the Failure to Stop and Look. siding and other obstructions to his view of a train from the east. He testified that he drove across the siding and when the front wheels of his automobile were practically on the south rail of the main track, he first saw the train at a distance of 100 to 150 feet.

In Kelsay v. Mo. Pac. Ry. Co., 129 Mo. 362, l. c. 372, MACFARLANE, J., said:

"The duty of a traveler upon a highway, in approaching a railroad crossing, to use all reasonable precautions to ascertain the approach of trains and to avoid injury by them, is well settled law, not only in this court, but perhaps in all the courts of this country. This rule imperatively requires him to look carefully, in both directions, at a convenient distance from the crossing, before venturing upon it, if, by looking, a train could be seen. The duty will not be performed by attempting to look from a point at which the view is obstructed. The duty is a continuing one until the crossing is reached. If there is a point between the obstruction and the track which gives opportunity to see, it is the duty of the traveler to look. He can not close his eyes and thereby relieve himself of the consequence of his own neglect. [Hayden v. Railroad, 124 Mo. 566.]" Again, on page 373: "Counsel insists that the evidence is contradicted by that

of plaintiff and the question was properly submitted to
the jury. But we do not think the evidence of Mrs. Kel-
say contradicts that of the surveyor and other witnesses
as to any of these physical facts. It is true she says that
when within a few feet of the crossing she could not have
seen a train a quarter of a mile down the track. That
she looked first one way and then the other. That she
was watching. That she tried to look, but could not see
anything. The second stop she says was made from four
to five feet from the track. The horse stopped for a
minute (or a few seconds) and then started up again in
a slow walk and when his feet got on the rail he was
struck. When she stopped the second time she looked to-
wards Nevada and could not see anything, and she could
have looked the other way, but did not have time. 'I
looked toward Nevada and could not see anything that
way, and I looked the other way and here was the cars
coming right on me.' There is no contradiction of the
fact that the embankment was twenty-five feet north of
the track, and there was no obstruction to the view of
the track between that and the crossing. But she does
say that she looked and did not see the train. It does
not clearly appear from what point she looked when she
could not see, but it does appear that she did not look
from the point of her second stop until the horse had
gone, and his feet were upon the track. But even con-
ceding that she testified that she looked east for a train
as soon as she had passed the obstruction, it is clear that
the train was in plain view and within two hundred or
three hundred feet of the crossing. One of two facts is
true: Either the plaintiff did not look with that care
common prudence required of her, or she did not look at
all, until too late to avoid the collision.'' And again:
''It was said in a recent case in this court, by the present
chief justice: 'It will thus be seen that it was a physical
impossibility for the deceased to have failed to see the
approaching train, if he looked in that direction, as it
was his duty to do, while yet in a place of safety, and be-
fore entering upon the line of danger. Had he done so,

there can be no question that he could, and would, have stopped his team until the train had passed, and then crossed over in safety. But for some unexplained reason he failed to do so. And thus it is, though the defendant may have been negligent in failing to give the signals for the crossing, and in permitting the high grass to be upon its right of way, yet the deceased having lost his life through his own negligence in failing to discharge the duty imposed upon him by law, in his situation, the plaintiff cannot recover for his death. [Hayden v. Railroad, 124 Mo. 1. c. 573.]"

The Kelsay Case has been frequently cited with approval on this proposition. [Evans v. Ill. Cent. Ry. Co., 233 S. W. 397, 399 (1); Hale v. St. Joseph Ry. Co., 287 Mo. 499, 518; Tannehill v. Railway, 279 Mo. 158, 170; Stotler v. Railroad, 204 Mo. 619; State ex rel. Hines v. Bland, 237 S. W. 1018, 1020 (3).] The foregoing citations from Judge MACFARLANE's opinion are applicable to the facts in the instant case.

IV. Plaintiff pleads that the train ran in excess of the ordinance speed of eight miles an hour and the failure to give the statutory signals, but does not plead the failure of the automatic crossing bell to function. There

Excessive Speed:
No Signals.

is no evidence that plaintiff relied upon any signals or that the train would be run in accordance with the ordinance speed. [Mockowik v. Railroad, 196 Mo. 550, 571.] Plaintiff knew this was a fast train and would not have been justified in believing the engineer would do the unusual thing of observing the ordinance (Reeves v. Railroad, 251 Mo. 169, 176) or in relying on the giving of the statutory signals. Such failure does not abrogate the rule of contributory negligence, nor excuse a traveler about to use a crossing from using care on his part.

In Weller v. Railway Co., 120 Mo. 635, 648, we said:

"In treating the question of the duty of a traveler to look and listen before attempting to cross the track of a railway, and the legal effect of a failure to perform

his duty in that respect, Beach in his work on Contributory Negligence (2 Ed.), Section 180, reaches the following conclusion: 'In the progress of the law in this behalf, the question of care at railway crossings as affecting the traveler, is no longer, as a rule, a question for the jury. The *quantum* of care is exactly prescribed as matter of law.' If it appear from the evidence that the traveler did look or listen, or both, then it becomes a question for the jury to determine, considering the situation, the duty of the railroad company, and all the facts and circumstances in evidence, whether the precautions taken were reasonable. There are cases, also, in which one going upon a railroad track may show himslf or be shown to have been so heedless of known danger as to preclude a recovery as a matter of law for injuries received through his own recklessness. In such case he assumes the risk of injury. These principles are established by numerous decisions of this court. [Zimmerman v. Railroad, 71 Mo. 476; Henze v. Railroad, 71 Mo. 636; Hanlon v. Railroad, 104 Mo. 381; Stepp v. Railroad, 85 Mo. 235; Easley v. Railroad, 113 Mo. 236; Kenney v. Railroad, 105 Mo. 284; Gratiot v. Railroad, 116 Mo. 450; Boyd v. Railroad, 105 Mo. 371.]''

Syllabus 2 in Henze v. Railroad, 71 Mo. 636, reads:

"In an action against a railroad company for the killing of plaintiff's husband and infant son at a public crossing, the testimony of plaintiff's witnesses showed that the deceased was driving, in a two-horse wagon, at a slow walk, along a highway, which crossed the railroad, when they were run over and killed by a train; and that the train was an extra, not running on regular time. The witnesses were not agreed as to whether the husband could have seen the train as he approached the crossing, but their testimony showed that while no bell was rung or whistle sounded, the train made plenty of noise, and the deceased could have heard it, if he had stopped and listened; that he did not stop to look or listen or take any other precaution to avoid danger; that as he approached the track he was holding the lines loosely in his hands,

apparently taking no notice of anything; that the railway was dry and hard, and the rattling of the wagon interfered with the sound of the train. *Held*, that a demurrer to the evidence was well taken and should have been sustained.''

In Laun v. Railroad, 216 Mo. 563, 578, GRAVES, J., quoted from Schmidt v. Railroad, 191 Mo. l. c. 288:

'' 'It is a settled law of this State that a person who goes upon a railroad track or proposes to cross it, must use his eyes and ears to avoid injury. And while a neglect of the regulations in regard to the running of trains amounts to negligence in law on the part of the railway company, this does not absolve pedestrians and others who propose to cross the tracks from the exercise of ordinary care. Every intelligent person who has arrived at years of discretion is presumed to know that it is dangerous to be upon a railroad track when trains are passing to and fro, and when crossing one, he is expected to be vigilant and watchful of the approach of the locomotive. The failure to exercise such vigilance is negligence *per se*. [Harlan v. Railroad, 64 Mo. 482.]

'' 'The law that a traveler, before entering upon a railroad track, must observe some caution for his own safety, and that a failure to do so will be such negligence as will preclude a recovery in case of injury, is as well settled in this State as is the law that a 'railroad company is guilty of negligence in running a train without observing the reasonable precaution required by law or ordinance. The measure of precaution to be observed by a traveler depends often upon the circumstances and surroundings. The general rule is that in knowingly approaching the track of a railroad, he must use his sense of sight or hearing to ascertain if there be danger. If the view is so obstructed that he cannot see, he should carefully listen. The circumstances may not require that he both look and listen, but common prudence requires that he do either one or the other and a failure to do so renders his act negligence in law. The rule of contributory negligence is not changed or abrogated by

reason of a statute or ordinance imposing the duty on account of the violation of which the injury resulted. [Weller v. Railroad, 120 Mo. 653.] The statute does not absolve persons approaching a public railway crossing from exercising common prudence to avoid danger, nor shift the responsibility to another should injury ensue from the failure to exercise it. [Kenney v. Railroad, 105 Mo. 284.]'

"To the same effect are the recent cases of Holland v. Railroad, 210 Mo. 338, and Stotler v. Railroad, 204 Mo. 619, in each of which the many supporting cases are cited and reviewed."

In the Stotler Case, supra, the fatal accident occurred at Pine Street crossing in Laddonia. The train was running at a high rate of speed in violation of the ordinance and without sounding the bell or whistle. On page 637, Fox, J., said:

"In Boring v. Railroad, 194 Mo. 541, the testimony tended to show that the plaintiff did not stop or look to see if a car was approaching from the east, from the time he left the sidewalk at the northeast corner of Cherry and Fifteenth streets, until the moment the car struck him. The distance between the point where he made the turn, at the northeast corner of said streets, and the point where he attempted to cross the track was but comparatively a few feet, and there is no evidence tending to show that the gripman could, by the exercise of due care and diligence, have stopped the car in time to have prevented the accident. BURGESS, J., in announcing the conclusions of this court, said: 'The evidence shows that the plaintiff was unobservant, careless of his safety, and walked into danger. There is nothing disclosed by the record which would justify the submission of the cause to the jury.'

"On Reno v. Railroad, 180 Mo. 469, this court again said, in discussing the proposition now under consideration, that 'from the testimony of plaintiff, and that given in her behalf, one of two inferences must be drawn, either that plaintiff saw the car and attempted to pass in front

of it, or that she did not look for the car's approach and attempted to cross over the tracks in disregard of it, and in either case, she was guilty of negligence which at least contributed to her injury.' ''

The learned judge then quoted from the Kelsay Case approvingly.

V.  Many witnesses, including several of plaintiff's witnesses, testified that they heard the train signals. Plaintiff testified that he looked alternatively to the east and to the west, but it was impossible for him to have looked to the east until he could see beyond the freight cars that obstructed his view.  The noise made by plaintiff's car would interfere with his hearing the train.  His evidence clearly shows that he neither stopped, looked nor listened, but drove heedlessly upon the crossing, and that he did not look to the east until the front wheels of his car were on the south rail of the track.  He exercised no diligence to discover the approach of the train but drove recklessly upon the crossing and assumed the risk of injury.  In such circumstances, plaintiff's contributory negligence was not a question for the jury, but as a matter of law, was for the court.  [Tannehill v. Railway, 279 Mo. 158, 170, 213 S. W. 818, quoting the Kelsay Case, 831; England v. S. W. Mo. Co., 180 S. W. 32, 34.]

In Burge v. Railroad, 244 Mo. 76, l. c. 94, GRAVES, J., said:

''It is clear from the statement of facts that the deceased was guilty of negligence as a matter of law. A railroad crossing is within itself a signal of danger. The law imposes upon the traveler the duty of exercising caution at such places.  He must make some effort to find out if there is an approaching train before he drives upon the tracks.  He can close neither his eyes nor his ears.  The means of self-protection given him must be used.  A failure so to do constitutes negligence.  In this case witnesses more unfavorably located than was deceased heard the 'roar' of the approaching train.  What

the witnesses heard the deceased could have heard had
he been in the exercise of due care. What they saw he
could have seen by the exercise of due care. The fact
that they heard the approaching train is conclusive that
he was not exercising his sense of hearing to determine
whether or not there was an approaching train. The
fact that the train could have been seen 900 or more feet
east of the crossing shows that he was not exercising his
sense of sight. There is no room for the presumption of
due care in this case. Such presumption is a presump-
tion of fact, and upon the appearance of the facts in
evidence the presumption takes flight, and no longer has
a place in the case. [Higgins v. Railroad, 197 Mo. 318;
Tetwiler v. Railroad, 242 Mo. 178; Morton v. Heidorn,
135 Mo. l. c. 617, and cases cited therein.]''

VI. In State ex rel. Hines v. Bland, 237 S. W. 1018,
1020, Graves, J., said: "There may be such surrounding
facts as not only to require the approaching traveler to
both look and listen, but to actually stop before venturing
upon a crossing.'' The opinion then quotes approvingly
from the Kelsay and Hayden cases, cited,
Looking and       supra. See also Stepp v. Railway, 85 Mo.
Listening not
Enough.           229; Evans v. I. C. Ry. Co., 233 S. W. 397,
399; Tannehill v. Railroad, supra.; Benner
v. Railroad, 262 Pa. 307, 105 Atl. 382, 2 A. L. R. 759.

Looking where plaintiff could not see, listening while
other noises prevented his hearing, were futile. It is no
more the exercise of ordinary care to look and listen
when and where looking and listening are useless, than it
is to fail to look and listen where looking and listening
are effective. [C. G. W. Ry. Co. v. Biwer, 266 Fed. 965.]

VII. But our statute (Laws 1911, p. 330, par. 9,
sec. 12), enacted in the interest of human life, establishes
the rule, applicable to this case, of the highest degree
of care that a very careful person would use under like
circumstances. "It contemplates a rule of conduct for

**Driving Automobile.** automobile drivers upon public roads, streets, avenues, alleys, highways or places much used for travel. That rule of conduct is to use the highest degree of care." [Threadgill v. United Ry. Co., 279 Mo. 466, 478; Jackson v. Tel. Co., 281 Mo. 358.] This is not a rule of evidence, but a rule of law, "peremptory, absolute and unbending" that may not be ignored or evaded by court or jury. It is inflexible and admits of no exceptions. The case rests upon plaintiff's evidence; there is no fact for a jury to find. Plaintiff's view being obstructed, he could neither see nor hear the approaching train. In such circumstances, it was his duty, in the exercise of even ordinary care, as we have seen from the foregoing cases, to have stopped his automobile while in a place of safety, so that he might have learned if a train were near at hand before driving into the danger zone. "If by stopping he can see or hear an approaching train or otherwise avoid the injury his failure to do so is contributory negligence as a matter of law." [33 Cyc. 1020.] The plaintiff's evidence establishes his contributory negligence and the demurrer to the evidence should have been sustained.

VIII. It is insisted, however, that there being no material change in the evidence, the decision on the first appeal constitutes the law of the case and should be followed. [Baker v. Railroad, 147 Mo. 140, 149.] There are notable exceptions to this rule, [Bagnell **State Decisis.** Timber Co. v. Railroad, 242 Mo. 11, 21; M. K. & T. Ry. Co. v. Am. Surety Co., 236 S. W. 657, 662.] But the evidence on the last trial was materially different, as indicated in Paragraph II. of this opinion. On the last trial plaintiff stated repeatedly that when the front wheels of his automobile were practically on the south rail he first saw the train about 100 or 150 feet distant. There can be no doubt that by the exercise of due care plaintiff could and would have seen the train before driving into the danger zone. Hence the facts are wholly different and the rule invoked is inapplicable.

The judgment is reversed.

PER CURIAM:—The foregoing opinion of HIG-
BEE, C., is adopted as the decision of Court in Banc.
*David E. Blair* and *Walker, JJ.*, concur; *Woodson, C. J.*,
and *Graves, J.*, dissent as to Paragraph II of the opinion,
but concur in the result reached in the other paragraphs
*James T. Blair, Ragland* and *White, JJ.*, dissent.

GRAVES, J. (concurring).—I concur in the result
of this opinion, but not for the reasons stated therein.
I fully recall the Steele Case, but it is not authority here.
In that case the two statements were made at the same
trial, and that was the matter discussed by Judge FARIS.
It was a much discussed opinion at the time, and cer-
tainly goes as far as we should go. It suffices to say that
it does not go far enough to be effective in any case
where the two statements occur at different trials.