Schwarz, Appellant *v.* Delaware, Lackawanna & Western Railroad Company.

*Negligence—Railroads—" Stop, look and listen "—Grade crossing—Death— Nonsuit—Safety gates—Watchman—Evidence.*

Where in an action against a railroad company for death at a grade crossing, the trial judge attempts to demonstrate by mathematical calculation the contributory negligence of deceased, and in doing so assumes that the train was moving at a uniform speed of forty miles per hour, and the wagon at a uniform speed of two miles per hour, the evidence in support of such assumption must be clear and undisputed; otherwise the question of the respective speed of the train and wagon is for the jury.

Where a railroad company has placed safety gates and stationed a watchman at a dangerous crossing in a populous district, where there is much travel at all hours, it is the duty of the company not to accelerate but to moderate the speed of its trains when the watchman is off duty and the gates locked open.

Where a person about to cross a railroad at a public crossing can only see a train approaching for a distance of about 585 feet, if he stops at the proper place and looks and listens, the railroad company is bound to regulate the running of its trains so as to make it possible for a driver to cross the tracks in safety if he has himself stopped, looked and listened at the proper place.

Argued March 6, 1905. Appeal, No. 47, Jan. T., 1904, by plaintiff, from order of C. P. Munroe Co., Feb. T., 1901, No. 11, refusing to take off nonsuit in case of Richard F. Schwarz v. The Delaware, Lackawanna & Western Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Trespass to recover damages for death of plaintiff's son and for the killing of two horses and the destruction of a wagon. Before FERRIS, P. J.

| 211 | 625 |
| 214 | ¹221 |
| 214 | ³222 |
| 211 | 625 |
| s218 | 192 |
| 218 | 196 |

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in refusing to take off nonsuit.

*F. B. Holmes,* with him *Shull & Shull,* for appellant.—It was not within the province of the court to determine either the speed of the train or that of the wagon.   That was a question for the jury under the evidence : Freel v. Wanamaker, 208 Pa. 279 ; Penna. R. R. Co. v. Werner, 89 Pa. 59 ; Sprowls v. Morris Twp., 179 Pa. 219 ; Stover v. Penna. R. R. Co., 195 Pa. 616 ; D., L. & W. R. Co. v. Smith, 1 Walker, 88 ; Muckinhaupt v. Erie R. R. Co., 196 Pa. 213.

Upon a state of facts admitted or proved by direct and undisputed testimony the court may pronounce the law applicable thereto ; but when alleged facts are the subject of inference, from other facts, and circumstances shown by the evidence, it is the exclusive province of the jury to consider the testimony and ascertain the facts under proper instructions from the court : McGill v. Pittsburg etc., Railway Co., 152 Pa. 331 ; Longenecker v. Penna. R. R. Co., 105 Pa. 328 ; Cromley v. Penna. R. R. Co., 208 Pa. 445 ; Arnold v. Phila. & R. R. R. Co., 161 Pa. 1 ; Penna. R. R. Co. v. Garvey, 108 Pa. 369 ; Hoffmeister v. Penna. R. R. Co., 160 Pa. 568.

The brush and piles of ties, which obstructed the view, were matters to be taken into consideration in determining whether or not the driver could have seen the train : Kuntz v. New York, etc. R. R. Co., 206 Pa. 162 ; Toban v. Lehigh & Wilkes-Barre Coal Co., 24 Pa. Superior Ct. 475 ; Faust v. Philadelphia & Reading Ry. Co., 191 Pa. 320.

*Everett Warren,* of *Willard, Warren & Knapp,* and *A. Mitchell Palmer,* for appellee, cited : Gangawer v. P. & R. R. R. Co., 168 Pa. 265 ; Kinter v. Penna. R. R. Co., 204 Pa. 497 ; Gerety v. Phila., etc., Railroad Company, 81 Pa. 274 ; Carroll v. Penna. Railroad Co., 12 W. N. C. 348 ; Schum v. Penna. R. R. Co., 107 Pa. 8.

OPINION BY MR. JUSTICE POTTER, May 1, 1905 :

This is an appeal from the refusal to take off a judgment of nonsuit.   The learned trial judge felt that from the facts, the unavoidable conclusion followed that the deceased (two young

men) were guilty of contributory negligence. He attempted to demonstrate this by a mathematical calculation, and in so doing assumed that the train was moving at a uniform speed of forty miles per hour; that the wagon was moving at a uniform speed of two miles per hour; that the wagon was struck when the driver was directly in the center of the south-bound track; that when the train came into view, the driver was thirty feet from that point. In order to sustain the judgment, all of these propositions must have been founded upon clear and undisputed evidence. From our examination of the testimony, we are not able to argue that they are.

With reference to the first matter mentioned—the speed of the train—the trial judge in his opinion says: "There is evidence, however, from which the only fair inference is that the train was running at the rate of about forty miles an hour, and the wagon was crossing the tracks at the rate of about two miles an hour." The opinion then goes on to say that "The only evidence bearing upon the rate of speed of the train is that of Edwin M. Rine, the division superintendent of the defendant company." These statements entirely ignore the testimony of four witnesses, all of whom resided close to the place of the accident and heard the approaching train, and testified as follows: James Anderson, who was an experienced railroad man, having been engaged as a fireman and a brakeman on both passenger and freight trains, testified that the train was running fast, very much faster than any other morning. John Williams, who was also a railroad man of some experience, testified that the train was running fast according to the sound. "It made more noise that morning than at any previous time. It was running faster than usual." Rosinda Dreher testified that she heard the train coming very fast. "It made a noise like all trains do when they are running fast, just seemed to come like a flash." Clara E. Kennedy testified that she heard the train coming at a very rapid rate. We are not able to find that Edwin M. Rine gave any evidence as to the speed of the train. He merely testified as to the fact of the train being behind schedule time, and to the orders given the engineer at Stroudsburg. There was no evidence as to what was done in consequence of these orders.

We agree with the statement of the trial court that "Where

the company has placed safety gates and stationed a watchman at a dangerous crossing in a populous district, where there is much travel at all hours, it is the duty of the company not to accelerate but to moderate the speed of its trains when the watchman is off duty and the gates locked open." The evidence of the witnesses above quoted, would seem to justify the inference of a failure of duty upon the part of the defendant company in this respect. In view of this testimony, the question of the rate of speed of the train was for the jury. Nor do we find that there was any evidence as to the speed of the wagon when passing over the crossing. The statement of the court is merely an inference from the testimony that the ordinary walking gait of the horses was about two miles an hour, and that they could not go up the ascent to the railroad tracks at much more than that.

The trial judge properly says : " In the absence of evidence as to whether these unfortunate young men did or did not stop, look and listen before crossing the railroad, we must presume that they did. So also they are presumed to have stopped at the best place." It appears from the evidence that one desiring to cross the railroad at this point could only see a train approaching from the direction from which this train came, for a distance of about 585 feet. Running at the rate of forty miles an hour, the train would cover this distance in about ten seconds, so that, if the driver stopped and looked and listened just before crossing the track, he might be caught before clearing the furthest track if so little as ten seconds of time were required to go over the crossing. If the view of an approaching train was restricted to so short a distance as 600 feet or less, the defendant company was bound to take that fact into consideration and to so regulate the running of its trains as to make it possible for a driver to cross the tracks in safety if, when just before entering upon them, he stopped, looked and listened, and no train was within sight or sound.

The evidence also shows that the conformation of the ground in the vicinity is a bluff along the railroad, and the rapids in the creek near by make a rumbling noise that somewhat resembles that of a train, so that it may be hard to distinguish between the noise of the water and that of a train coming around the curve.

What we said in Cromley v. Penna. R. R. Co., 208 Pa. 445, is applicable here : " It cannot be said that the driver saw the train or should have seen it, because it may have come into view in the 500 (here 585) feet to which his line of vision was at first limited, after he had looked and started to cross. It was probably moving twenty times as fast as he was, and, after coming into view, would cover the distance to the crossing before he could reach a place of safety. Nor can it be said by the court that he was negligent in not seeing and avoiding the train, if it came into his view after he had started on. True, it was his duty to continue to look as he approached the track, but he may have been delayed by the condition of the crossing or by the rearing of his horses. Allowance must be made for these facts and for his bewilderment of mind if, when committed to the act of crossing, he was suddenly confronted with an unexpected and alarming danger."

Our conclusion, upon the whole, is, that the evidence in this case was by no means so clear as to justify the court in finding as a matter of law that the driver and his companion were guilty of contributory negligence.

The second assignment of error is sustained and the judgment is reversed with a procedendo.