## Minella et al. *v.* Pennsylvania Railroad Co., Appellant (No. 1).

Argued September 30, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

480

*Robert D. Dalzell,* with him *Dalzell, Dalzell, McFall & Pringle,* for appellant.—Plaintiffs were contributorily negligent in venturing onto the tracks without having one of them alight and look along the track: Bass v. P. R. R., 303 Pa. 382; Craig v. P. R. R., 243 Pa. 455; Myers v. R. R., 150 Pa. 386; Kraus v. R. R., 139 Pa. 272; Hovenden v. R. R., 180 Pa. 244; McCartney v. R. R., 307 Pa. 226.

*A. H. Rosenberg,* for appellees.—The driver's work required him to back over the crossing as he did: Van Zandt v. R. R., 248 Pa. 276; Hastings v. R. R., 272 Pa. 212.

Plaintiffs used proper care under the circumstances: Neiman v. Canal Co., 149 Pa. 92; Johnson v. Director General, 278 Pa. 491; Bard v. Rys., 199 Pa. 94; Kuntz v. R. R., 206 Pa. 162.

Whether plaintiff should have gone forward to a better location to look is a question for the jury: Guilinger v. R. R., 304 Pa. 140; Siever v. R. R., 252 Pa. 1; Zimmerman v. R. R., 302 Pa. 406; Calhoun v. R. R., 223 Pa. 298.

OPINION BY JUSTICE MAXEY, November 28, 1932:

About 2:20 p. m. on August 16, 1928, Rudolph Minella, then a minor, was injured in an accident at a grade crossing of the defendant company. A work train pulled by an engine which was proceeding backwards crashed into a truck operated by him, seriously injuring Minella and destroying the truck. Suits for the injuries sustained by the minor plaintiff and by the truck were brought against the defendant and the cases were tried together. Defendant asked for binding instructions. These were refused. The case was submitted to the jury and a verdict was returned in favor of the plaintiffs, Victor Minella and Angelo Minella, in the sum of $2,784, and in favor of Rudolph Minella in the sum of $9,350. Defendant made a motion for judgment n. o. v. The motion was denied. The accident giving rise to this case happened at what is known as "Cuddy Crossing" on the B. & M. Branch of the Pennsylvania Railroad in the village of Traveskyn. The railroad at that point consists of two tracks, a main line track and a siding. These tracks run approximately east and west and they cross at grade the Miller's Run Road. At the time of the accident the highway near the tracks was being graded and improved. The defendant company had no part in these improvements. On the day of the accident the trucks were being loaded with soil from a bank by a steam shovel twenty-five to fifty feet north of the crossing. Then these trucks carried their load to a dump about nine hundred feet south. The minor plaintiff, who was the driver of one of these trucks, which was eighteen feet long, was returning with his truck from the dump to the steam shovel for another load. He drove in a northerly direction on Miller's Run Road until he had reached a point just south of the crossing. Near the crossing is another road known as "Campbell's Run Road" or "Campbell's Street." This road parallels the railroad. When Minella on his return trip reached this road, he turned his truck to his left, i. e., westward, into Camp-

bell's Street. Then he stopped, shifted gears, and backed his truck across the railroad at a speed of about four or five miles an hour, toward the steam shovel, this being the convenient way to put the truck in position for loading. The siding was the first track he crossed in backing up. The main line was the second track. While the truck was stopped on Campbell's Street, Minella had a view westward to a curve in the railroad for a distance of about 1,400 feet, although he testified that he could see only about 300 feet. Charles Huston, who was on the truck with him, estimated the distance of visibility along the track to the west as 1,200 to 1,400 feet. Defendant's civil engineer testified from actual measurement that the distance was 1,475 feet from the crossing to the curve. The view westward was obstructed by cars on the siding and by an unloading plant for a distance estimated by Minella as 150 feet and by Huston as between 250 to 350 feet, but, beyond the line of these cars, the view of the track all the way to the curve was unobstructed.

Plainiff said that he backed his truck until he was at a point about 18 feet from the siding crossing. He then stopped, looked in both directions and listened. He said that at that point he could see toward his left about 500 to 600 feet and toward his right or westward (from which direction the train came) "about 35 or 40 feet, up to the cars." He said that he "passed the cars on the siding and looked to the right [i. e., westward] and couldn't see any further than 50 feet; there was too much smoke."

Minella backed on over the crossing and when the cab of his truck had reached the center of the main track, it was struck by a train which came from the west. He and his truck were carried down the track 125 feet.

There was a conflict of testimony as to the speed at which the work train was running. The testimony adduced in behalf of plaintiff placed the speed at from 25 to 35 miles an hour. Defendant's witnesses fixed the

speed at 15 miles an hour. There was also a conflict of testimony as to whether or not the train had given warning signals. This testimony presented for the jury the question of defendant's negligence.

The weakness of the case plaintiff made out is that it is not free from contributory negligence. Under his own showing he failed to exercise due care. His excuse for backing onto the path of an oncoming train is that he could not see further than 50 feet down the track to the west because of the smoke. He said this smoke came from a steam shovel about 50 feet from the crossing and that "it settled on the main tracks between the cars and the hillside." Another witness who had crossed the tracks shortly before the accident said that "it was hard to see up the track [toward the west] because of the sultriness of the day and because of the smoke, dust and dirt hanging." He was asked: "Could you see through that at all?" He replied: "I wouldn't say that you couldn't have, but you had to be very careful there to get a view as to what was going on." Other witnesses testified that there was "lots of black smoke coming from the steam shovel at the time of the accident." Huston, who was also on the truck, did not in his testimony mention the smoke. He testified that the interruption of his view was caused by the cars on the siding, for a distance of 250 or 350 feet, but beyond these cars he could see, as he testified, at least twelve hundred feet.

Taking the testimony of Minella at its face value that his range of vision was limited to 50 feet by smoke, the evidence shows that he did not wait for the smoke to clear. There was nothing in the testimony showing that the smoke at that point was what can with accuracy be called "permanent." The fact that the steam shovel was working near the crossing all day does not prove that the smoke at the crossing was "a permanent condition." It is unusual both for a steam shovel engaged as this one was to be emitting smoke constantly and for smoke to settle at one point near the earth in the

open air and to remain there for any great length of time. Even if the smoke had remained there for a considerable period that fact in itself would not warrant any person backing his car into a cloud of smoke on a track on which trains frequently passed, unless he had first assured himself that no train was near. For a man to drive his car onto a railroad track in the midst of a cloud of smoke is like a marine captain moving his vessel into a dense fog on a course across which ships frequently pass. That would be reckless navigation. Minella's chief witness when on the stand declared, as above noted, that he "wouldn't say" that one "couldn't have seen" through the smoke at the crossing just before the accident, but that one "had to be very careful there to get a view as to what was going on."

It was Minella's duty to be "very careful to get a view as to what was going on," and his failure to do so is what brought the injuries complained of upon himself and upon his truck. As Mr. Justice Linn aptly said in a recent opinion handed down by this court in McCartney v. P. R. R. Co., 307 Pa. 226, 230, 161 A. 63: "Obstruction of view of possibly approaching trains is no excuse for the failure to 'stop, look and listen.' Perfunctory compliance is not sufficient. The object is to get information. What conduct will comply with the rule depends, of course, on the character of the obstruction; if it is momentarily changing, the change must be taken into account. If an obstruction is permanent, what must be done in the exercise of care may be very different from what is possible and sufficient if the obstruction is temporary or, as in this case, is actually disappearing. ...... He was clearly risking a known danger in attempting to cross. There can be no doubt about that obvious risk. If a rapidly moving train came through that smoke, a collision was inevitable, as the event proved." See also Hower v. P. R. R. Co., 308 Pa. 246, 162 A. 231.

In considering the case before us, it should be borne in mind that the defendant company was in no way responsible for the smoke being emitted by the steam shovel. Nor was the minor plaintiff an employee of the defendant company, acting under its orders to back his truck to the steam shovel. If a dense pall of smoke had permanently settled on this railroad crossing for a sufficient length of time to put the defendant company or its servants on notice of its existence, it would have been the duty of the defendant company to take such precautions at the crossing as to make such accidents as the one that took place in this case unlikely to happen. When a railroad company knows that the view of approaching trains at a crossing is restricted to an unduly short distance, it is "bound to take that fact into consideration and so to regulate the running of its trains as to make it possible for a driver to cross the tracks in safety if, when just before entering upon them, he stopped, looked and listened, and no train was within sight or sound": Schwarz v. D., L. & W. R. R. Co., 211 Pa. 625, 628, 61 A. 255.

It was obviously the duty of Minella to wait until the smoke cleared away, and, when it did not clear away within a reasonable time, to avail himself of the services of the man who was on the truck with him, the foreman of the job, by having him walk west a short distance, to make observations and acquaint Minella with the situation. Railroads are not obliged to accommodate the speed of their trains to smoke that lingers for brief intervals over railroad crossings. The engineer of a train has a right to assume that no person will take a "leap into the dark" and risk his life by entering on a railroad track with his senses of hearing and sight unable to function because of noise and smoke. Such a person is for practical purposes at that time deaf and blind and busy railroad crossings are unsafe places for persons unfortunate enough to be thus afflicted.

The plaintiff in backing his truck onto this track with his vision restricted to fifty feet by smoke obviously took a chance which no person having due regard for his own safety should take. If the employer of the plaintiff required him to back his truck across the railroad tracks under the conditions described, the fault was the employer's in not providing the employee with a safe place to work. If the employee took the risk of backing his truck through dense smoke across a railroad track of a company which had nothing to do with his employment and which was not responsible for the smoke, the unfortunate consequences of taking that risk cannot justly be visited on the railroad company.

The judgment is reversed and herein entered for the defendant.