Fallon *v.* Penn Central Transportation Company, Appellant.

Argued January 15, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Eugene P. Balderston, Jr.,* for appellant.

*Harry J. Bradley,* for appellees.

OPINION BY MR. JUSTICE BARBIERI, July 21, 1971:

This case involves an accident between a Penn Central Transportation Company train and an automobile operated by the minor plaintiff James M. Fallon, Jr. Fallon was awarded $50,000.00 by a jury in the Court of Common Pleas of Delaware County. Fallon's parents received an award of $7,500.00 which was reduced to $4,308.67 in accordance with a remittur. Penn Central's motions for judgment n.o.v. and for a new trial were

denied. Penn Central now appeals from these judgments

Most of the facts are undisputed. The accident occurred on the railroad crossing at the Gladstone Station on the Penn Central Railroad's Philadelphia-Media line. The crossing, maintained by the railroad to enable its patrons to use the parking lot south of the two tracks, runs generally north-south while the tracks run generally east-west. On November 12, 1964, at approximately 8:00 a.m., Fallon, then seventeen years old, approached the crossing from the north. Fallon was then a student at a college in Philadelphia, and had driven the same route every weekday morning for at least two months. He planned to park his car in the lot and catch the next eastbound train to Philadelphia.

As Fallon approached the crossing, an eastbound train was coming to a stop on the farther track, blocking the crossing. He stopped his car, his front bumper some twenty feet from the nearer, westbound track, to wait for the train to pass. At this point he could see only a few feet east down the westbound track, his view being obstructed by the station's shelter. This shelter is set back approximately eleven feet from the nearest rail and is approximately fifty feet to the east of the crossing. The window on the left, or driver's side, of Fallon's car, through which he would look for a westbound train before crossing the closer track, was open approximately a quarter of an inch at the top. His radio was on, although "[i]t wasn't on extremely loud." After the eastbound train had cleared the crossing, Fallon proceeded toward the westbound track. He moved forward slowly but did not stop until the front of the car was within the swath of the train. He did not hear any warning signal. He first saw the train, traveling at approximately forty-five miles an hour, when it was less than sixty feet away and then "blacked out." The front steps on the right side of the

lead car of the train (which was not scheduled to stop at Gladstone) collided with the left front of the automobile. Fallon was thrown from his car and sustained bodily injuries.

Penn Central makes five arguments on appeal: (1) the evidence of negligence was insufficient to warrant a verdict against appellant; (2) the verdict was against the weight of the evidence; (3) the appellee was guilty of contributory negligence as a matter of law because he did not stop, look and listen from a place of safety where he would have a reasonable view of oncoming trains; (4) the trial court erred in not instructing the jury, as requested, that appellant had a superior right of way at the crossing; and (5) the verdict was excessive. We find no merit in any of appellant's contentions. We affirm.

We treat first the issue of the sufficiency of the evidence of Penn Central's negligence. It is well established that in considering a motion for a judgment non obstante veredicto, the evidence must be viewed in the light most favorable to the verdict winner. See, *Herron v. Silbaugh*, 436 Pa. 339, 260 A. 2d 755 (1970); *Ferraro v. Ford Motor Co.*, 423 Pa. 324, 223 A. 2d 746 (1966). A reviewing court is not to draw its own inferences from the testimony but is rather to give the verdict winner the benefit of every favorable inference of fact which the jury might legitimately draw from the evidence. See, *Flaherty v. Pennsylvania Railroad Co.*, 426 Pa. 83, 231 A. 2d 179 (1967); *Joseph v. United Workers Association*, 343 Pa. 636, 23 A. 2d 470 (1942).

Viewed in this light, we find that the evidence was sufficient to support the verdict. Fallon and one of his witnesses testified that it was difficult if not impossible to gain an adequate view of the westbound track without putting one's car in or dangerously close to the swath of an oncoming train. The westbound track was straight for a distance of 1380 feet to the

east of the crossing and then curved out of sight. One of appellee's witnesses testified that she had to put her car "on the track" or "practically . . . on the tracks" to get a view of the 1380-foot straightaway. Fallon himself indicated that trees overhanging the tracks approximately 230 feet from the crossing obscured his view of oncoming trains.

Although maintaining a crossing with what the jury may have believed to be a dangerously limited view might not have been enough by itself to warrant a finding of negligence, a railroad does have a special duty of care towards those who use such a crossing. "When a railroad company knows that the view of approaching trains at a crossing is restricted to an unduly short distance, it is 'bound to take that fact into consideration and so to regulate the running of its trains as to make it possible for a driver to cross the tracks in safety if, when just before entering upon them, he stopped, looked and listened, and no train was within sight and sound': Schwarz v. D. L. & W. R. R. Co., 211 Pa. 625, 628, 61 A. 255." *Minella v. Pennsylvania Railroad Co.,* 309 Pa. 479, 164 A. 520 (1932). Although we might not have drawn the same inferences from the evidence as did the jury, we believe that the jury was justified in finding negligence from testimony that the train was traveling at 45 miles per hour, that the engineer never saw Fallon's car, and that the engineer failed to sound the train's horn.

Appellant contends that the crucial issue of whether or not the driver sounded the train's horn should have been decided by the trial judge as a matter of law and not left to the jury. Appellant argues that the "negative" testimony of Fallon that he did not "hear" any warning signals and of his witness that she did not "recall hearing any" signal was not enough for the issue to be submitted to the jury in light of Penn Central's "affirmative" testimony by three railroad em-

ployees that the whistle was blown. Appellant cites *Haller v. Pennsylvania Railroad,* 306 Pa. 98, 159 A. 10 (1931) for the proposition that for testimony to qualify as affirmative the witness must *say* that he was *listening* for a warning.

The affirmative *versus* negative evidence issue is one upon which there is a considerable body of law. Mr. Justice (now Chief Justice) BELL wrote in *Ferruzza v. Pittsburgh,* 394 Pa. 70, 77, 145 A. 2d 706 (1958) : "The earlier cases held that a statement by a witness that he did not hear any sound or warning was negative and insufficient to prove negligence, if there was affirmative testimony that a bell was rung or an audible sound given: [citing cases]. This was subsequently modified (expressly or by implication) and the statement that he did not hear a bell rung or that it was not rung was interpreted to have the same meaning and amount to positive testimony—positive in character and substance—if the witness was in a position to hear and was *consciously* listening for a sound or warning: [citing cases]." (Emphasis in original.)

In *Costack v. Pennsylvania Railroad Company,* 376 Pa. 341, 348, 349, 102 A. 2d 127 (1954) the Court, speaking through Mr. Chief Justice STERN, said: *"The question is not one merely of form of expression—* whether, for example, the witness says that 'no warning was given' as distinguished from his saying that 'he heard no warning': (Kindt v. Reading Company, 352 Pa. 419, 426, 43 A. 2d 145, 149). Rather, it is whether he had acuteness of hearing, sufficient opportunity for hearing, and occasion for listening, and whether all the other circumstances tended to show that if a warning signal had been given he probably would have heard it, and therefore, not having heard it, he could fairly assert that no warning was given." (Emphasis added.)

It thus appears that a witness does not have to *say* that he was *listening* for his testimony to be considered positive evidence. Although Fallon had his radio on and window open only a quarter of an inch, we think that the jury could properly infer that he was consciously listening from the fact that he had "occasion for listening"—he was approaching a railroad crossing. In addition, Fallon's witness, whose window was down and whose radio was apparently off, also testified to hearing no warning while she was preparing to cross the tracks. The jury could have inferred that this witness also was "consciously listening" and that in fact no warning or a less than adequate warning was sounded. We note that the Court in *Costack* found that the consciously listening test had been met under circumstances similar to those in this case.

Furthermore, even if the jury could not have properly made these inferences, appellant cannot be heard to complain. For appellant at no time requested that a "consciously listening" instruction be included in the charge. See *Heppe Estate*, 440 Pa. 328, 269 A. 2d 687 (1970).

Appellant's second contention is that the verdicts were against the weight of the evidence and that the trial court abused its discretion in denying the motion for a new trial on this ground. As was said in *Brown v. McLean Trucking Co.*, 434 Pa. 427, 256 A. 2d 606 (1969) (at pages 429-430): "The testimony was seriously in conflict. The jury could have found for the defendant either on the ground of no negligence on the part of defendant or the existence of contributory negligence on the part of the plaintiff. This Court, however, will not reverse unless there has been a palpable abuse of discretion by the trial judge. [citing cases] Palpable abuse occurs, inter alia, when the trial judge permits a verdict to stand although it is 'so contrary to the evidence as to shock one's sense of justice and

to make the award of a new trial imperative so that right may be given another chance to prevail.' [citing cases]" After a careful review of the record, we are convinced that there has been no such abuse in this case.

Appellant stresses photographic evidence which allegedly shows that a motorist could see approximately 530 feet down the westbound track with a clearance of five feet between his front bumper and the swath of the train, 1,000 feet with a clearance of four feet, and 1,380 feet with a clearance of two feet. The pictures, taken five days after the accident, indicated that the trees which Mr. Fallon implied obstructed his view did not overhang the rails at all. However, the jury may have believed (1) that the trees did obscure the view of the rails; (2) the testimony by Fallon's witness that one had to be on the rails to see 1,380 feet; or (3) that even assuming that appellant's assertions of view *vis a vis* clearance to be true, the crossing did not permit a reasonably unobstructed view from a reasonably safe vantage point. With these possibilities open to the jury, we cannot say that the trial judge abused his discretion in not ordering a new trial.

Appellant's third contention is that the trial court erred in not granting Penn Central a judgment n.o.v. because Fallon was contributorily negligent as a matter of law. Appellant asserts that neither of appellee's stops fulfilled the requirements of the stop, look and listen rule. Appellant argues that the first stop was not in compliance with the rule because made where there admittedly was not a reasonably unobstructed view of the tracks, citing *Craig v. Pennsylvania Railroad Co.*, 243 Pa. 455, 90 A. 135 (1914) and *Ramsey v. Baltimore & Ohio Co.*, 336 Pa. 498, 9 A. 2d 348 (1939); and that the second stop did not qualify under the rule because made within the swath of the train, citing *Serfas v. Lehigh & New England Railroad Co.*, 270 Pa.

306, 113 A. 370 (1921). Appellant also argues that the reasonableness under the circumstances of appellee's acts after the first stop was not a question for the jury because appellee offered no proof to show that the first stop was made at "the best place at which to stop" (*Armstrong v. Pennsylvania Railroad Co.*, 212 Pa. 228, 229, 61 A. 831 (1905)), or at the "usual stopping place" (*Guilinger v. Pennsylvania Railroad Co.*, 304 Pa. 140, 155 A. 293 (1931)).

Appellant's view of the law would be correct, however, only if it could be assumed that one or both of the two major elements of appellee's case—a crossing which did not admit of a reasonable view and the failure of the engineer to blow his whistle—were not made out in the court below. As we have already decided the sufficiency and weight questions on each of these elements in appellee's favor, the contributory negligence claim must be rejected under *Johnson v. Pennsylvania Railroad Co.*, 399 Pa. 436, 160 A. 2d 694 (1960). There our Court said (at page 440) that a "railroad company . . . cannot use the stop, look and listen sign as a badge of immunity from liability for accidents occurring as the result of nonvisibility. Of what value is it to stop if stoppage does not allow the traveler to see the train, and of what value is it to listen, if the railroad fails to sound warning signals which perilous crossings demand?"* Although the facts of our case

---

* The Court in *Johnson* rejected *sub silentio* language in such cases as *Benner v. Philadelphia & Reading Railroad Co.*, 262 Pa. 307, 105 A. 283 (1918); *Minella*, supra; and *Dolibois v. Pennsylvania Railroad Co.*, 169 Pa. Superior Ct. 17, 82 A. 2d 65 (1951), which indicated that one would be held contributorily negligent for non-compliance with the stop, look and listen rule even though compliance would not have prevented the accident involved. The courts in these cases apparently believed that the driver should do something to avoid taking a "leap in the dark" (*Minella*, supra, at 309 Pa. 485) or not cross the tracks at that crossing. The holding in *Johnson* mitigated the harshness of these earlier rulings.

differ from those in *Johnson*, here as in that case there were sufficient facts from which a jury could find that there was no reasonable view from a place of safety and that no adequate warning was sounded. The holding in *Johnson* that under such circumstances there can be no contributory negligence for failure to stop, look and listen is equally applicable to this case.

Appellant's fourth contention is that the trial court erred in failing to include in its charge the following instruction: "At grade crossings, a railroad train has the superior right of way over the crossing." We agree with the court en banc that the trial court correctly dishonored this request and instead treated the right of way question in the context of the visibility and audibility of the train. Right of way has no meaning other than in this context. Liability in this case is not a question of who reached the crossing first but rather of the conduct of the railroad as to motorists who have complied (or have been relieved of compliance under *Johnson*) with the stop, look and listen rule.

Finally, appellant contends that the jury's award of $50,000 for Fallon's pain and suffering was exorbitant, prejudicial, and shocking to the conscience of a court. Fallon spent approximately two months in the hospital over the span of a year, missed a year of college, suffered a disability of the urinary tract for almost a year, and apparently has scars remaining on his face and other parts of his body. We do not find the amount of the award shocking to our consciences. See *Smalich v. Westfall*, 440 Pa. 409, 269 A. 2d 476 (1970) and *Guzman v. Bloom*, 413 Pa. 576, 198 A. 2d 499 (1964).

Judgments affirmed.

———

CONCURRING OPINION BY MR. JUSTICE EAGEN:

While I join in Mr. Justice BARBIERI's opinion, I feel compelled to add that in a proper case I will urge

this Court to re-evaluate several prior decisions applying to the "Stop, Look and Listen" rule.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:
I dissent.

I would enter a judgment non obstante veredicto in favor of Penn Central Transportation Company for each of two reasons: (1) Plaintiffs failed to prove negligence, and (2) the minor plaintiff was guilty of contributory negligence as a matter of law.

DISSENTING OPINION BY MR. JUSTICE POMEROY:
A reading of the record in this case persuades me that the verdict is against the weight of the credible evidence with respect to the crucial issue of the visibility afforded to the appellee-plaintiff of the westbound tracks and train of the appellant-defendant at the grade crossing here involved.

Appellee testified that the station shelter, a telephone box and particularly trees at the end of the platform interfered with his view to the left, which accounted for his not seeing the train until it was about 60 feet away, when he had come to a stop with the front of his car within the swath of the train. A witness for appellee testified that "you practically have to have your car on the tracks to see to your left." To the contrary, appellant introduced photographs taken five days after the accident, and engineering plans of the crossing, tracks, and adjacent structures. As the learned judge noted, the photographs were professionally taken and related to "a carefully plotted survey of the station area and tracks with accurate measurements done by a professional surveyor." These documents were not contradicted or impugned in any way. The pictures, as the majority opinion observes, "indicated that the trees which Fallon implied obstructed his view did not overhang the rails at all." The plans

and pictures show that a motorist could see approximately 530 feet to the left down the westbound track with a clearance of 5 feet between the front of the automobile and the swath of the train, with a 4-foot clearance, the view was increased to 1000 feet. There was no evidence that these dimensions and distances were not accurate. Indeed, the appellee did not testify that he looked to his left when his car was in these positions; only that when he did stop, with the front end of his car in the swath of the train, "I turned my head and saw it [the train] with my left eye", 60 feet away.

This being the state of the record on this point, the jury's verdict, which necessarily exculpates appellee of any contributory negligence, is, in my opinion, "so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative so that right may be given another opportunity to prevail." Cf. *Brown v. McLean Trucking Co.,* 434 Pa. 427, 430, 256 A. 2d 606 (1969); *Austin v. Ridge,* 435 Pa. 1, 255 A. 2d 123 (1969). I thus conclude that the lower court abused its discretion in refusing to order a new trial, and respectfully dissent from the decision of this Court which affirms the refusal.