363 A.2d 1234

Anna Mae EVANS, Administratrix of the Estate
of Lawrence D. Evans, Deceased,

and

Soren P. West, Administrator of the Estate
of Albert Kresge, Deceased

v.

The READING COMPANY, Appellant.

The READING COMPANY, Appellant,

v.

Anna Mae EVANS, Administratrix of the Estate
of Lawrence D. Evans, Deceased,

and

Soren P. West, Administrator of the Estate
of Albert Kresge, Deceased.

Superior Court of Pennsylvania.

Sept. 27, 1976.

Robert R. Reeder, Dennis J. O'Leary, J. V. Pinto, Philadelphia, for appellant.

Soren P. West, James F. Heinly, Lancaster, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge.

A set of railroad tracks intersects Route 322 at what is known as the Rocklyn Crossing, in Honeybrook, Township, Chester County. The tracks run north-south while Route 322 runs east-west. On the morning of October 2, 1963, a train owned and operated by appellant Reading Company, en route from Reading, Pennsylvania to Wilmington, Delaware, was proceeding south toward the intersection. At the same time, a tractor-trailer driven by

appellee's decedent, Lawrence Evans, was proceeding east toward the intersection on Route 322. The train reached the intersection only moments before the truck, precipitating the accident which cost Mr. Evans his life.

At the time of the collision, the train was moving at a speed of between 22 and 23 miles per hour, while the truck's speed was variously estimated to have been between 35 and 45 miles per hour. The evidence supports no other conclusion than that neither Mr. Evans nor the train engineer ever attempted to stop their respective vehicles. The force of the collision overturned two diesel engines and derailed five of the forty freight cars.

Appellee Anna Mae Evans, administratrix of the estate of Mr. Evans, filed wrongful death and survival actions against appellant. In addition, appellee Soren P. West, administrator of the estate of Albert Kresge (the decedent's employer), filed an action in trespass against appellant to recover damages for the destruction of the truck and its contents. Appellant filed suit against both appellees to recover for the damages to the train and tracks.

After trial, a jury returned a verdict in favor of appellee Evans in the amount of $150,000.00 and in favor of appellee West for $5,800.00. From the lower court's denial of motions for judgments N.O.V. and for a new trial, appellant appeals. We must reverse and remand for a new trial.

■■ Appellant first alleges that it is entitled to judgments N.O.V. because the evidence established that the decedent violated the so-called "stop, look, and listen" rule, a well established corollary of the doctrine of contributory negligence in Pennsylvania. The stop, look, and listen rule states that as a matter of law, a reasonably prudent person will stop, look, and listen to ascertain that no trains are approaching before venturing across a railroad track. As a matter of law, one who fails to

perform this duty to himself is guilty of negligence. *Tomasek v. Monongahela Ry.*, 427 Pa. 371, 235 A.2d 359 (1967); *Riesburg v. Pittsburgh & L.E.R.R.*, 407 Pa. 434, 180 A.2d 575 (1962); *Ramsey v. Baltimore & O.R.R.*, 336 Pa. 498, 9 A.2d 348 (1939).

While the duty to stop, look, and listen has become a rule unto itself, it is still governed in its application by the more general dictates of the contributory negligence doctrine. One who fails to stop, look, and listen will not be precluded from recovering if his failure was not contributorily negligent, *i. e.*, recovery will not be precluded where the failure was not negligent or where it was not a contributing cause of the injuries. Thus, in *Johnson v. Pennsylvania R.R.*, 399 Pa. 436, 160 A.2d 694 (1960), the failure to stop, look, and listen was not held to constitute contributory negligence where the decedent would not have seen the danger even if he had stopped, looked, and listened. *See also Keasey v. Pittsburgh & L.E.R.R.*, 404 Pa. 63, 170 A.2d 328 (1961).

In this case, appellant's witnesses, consisting primarily, although not entirely, of train crewmembers, testified that the crossing was preceded by cross-buck signals and flashing lights. The witnesses testified that the lights were working just prior to the accident. In addition, they testified that the engineer sounded the train's whistle and bells until the moment of impact.

Appellees' witnesses, consisting primarily of motorists who had been following the decedent's truck on Route 322, testified that due to a strong glare produced by the rising sun, visibility was greatly reduced. These witnesses testified that they could only see between 100 and 150 feet in front of their vehicles, and that they were unable to discern the fact that a train was in front of them until they had alighted from their vehicles. Several of appellees' witnesses testified that the foliage surrounding the tracks prevented oncoming motorists from seeing

an approaching locomotive until the locomotive was 25 to 50 feet from the intersection. Finally, the witnesses all testified that prior to the accident, they heard no whistles or bells and saw no lights.[1]

 In reviewing the grant or denial of a motion for judgment N.O.V., the evidence, together with all reasonable inferences deducible therefrom, must be considered in a light most favorable to the verdict winner. *Skoda v. West Penn Power Co.*, 411 Pa. 323, 191 A.2d 822 (1963); *Hargrove v. Frommeyer & Co.*, 229 Pa.Super. 298, 323 A.2d 300 (1974). An individual should be declared guilty of contributory negligence as a matter of law only where that conclusion is inescapable. *Enfield v. Stoudt*, 400 Pa. 6, 161 A.2d 22 (1960); *Bascick v. Barnes*, 234 Pa.Super. 616, 341 A.2d 157 (1975).

 Viewing the record with these precepts in mind, we cannot say that the lower court erred in denying appellant's motion for judgments N.O.V. The jury in this case could have found that due to the sun or the foliage or both, the decedent did not see the crossing or did not see it until it was too late to stop. Under those circumstances, the decedent's failure to stop, look, and listen would not constitute contributory negligence.

---

1. Appellant contends that this "negative" testimony is not strong enough to overcome the "positive" testimony of the witnesses who claimed to have seen the lights and heard the warning signals. However, the law in Pennsylvania accords equal strength to negative testimony when the witnesses were in a position to have heard and seen. *Fallon v. Pennsylvania Cent. Transp. Co.*, 444 Pa. 148, 279 A.2d 164 (1971). Whether the witnesses were in such a position is a question for the jury. In this case, the lower court properly instructed the jury as to the weight and effect of negative testimony.

Moreover, even if the positive testimony was held to establish irrefutably that the lights were functioning and the bells and whistles were sounding, it would not be established that decedent saw the lights and heard the signals. The fact that other similarly situated drivers did not perceive the warnings is relevant to the jury's ultimate determination.

■ Appellant's next allegation is that the lower court erred in failing to instruct the jury in accordance with the "assured clear distance ahead" rule. Like the stop, look, and listen rule, the assured clear distance ahead rule is a corollary of the doctrine of contributory negligence. Unlike the stop, look, and listen rule, however, the assured clear distance ahead rule is of statutory origin:

> "[N]o person shall drive any vehicle, upon a highway . . . at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead." Act of May 1, 1929, P.L. 905, § 1002 (75 P.S. § 1002), *as amended.*

The lower court judge refused to instruct the jury in accordance with the rule because he felt that the rule does not apply to intersection cases. However, that conclusion is in complete conflict with this court's recent decision in *Unangst v. Whitehouse,* 235 Pa.Super. 458, 344 A. 2d 695 (1975).

Appellees seek to justify the lower court's ruling on the ground that the assured clear distance ahead rule does not apply to cases where a sudden emergency places an obstacle within the previously assured clear distance ahead. In *Unangst v. Whitehouse, supra,* we held that "where a sudden and clear emergency arises inside the range of the previously assured clear distance, the rule has been held inapplicable. (citations omitted)" and that "in an intersection case the application of the assured clear distance ahead rule depends on whether the vehicle proceeding into the intersection arrived in the lane at a point outside of or within an approaching motorist's assured clear distance ahead. (citations omitted). If the entry was made within the assured clear distance ahead but at a point sufficiently distant to still allow the driver sufficient time in which to stop, the duty imposed is not that of the assured clear distance rule but rather that of the general duty of care and control on the road. (foot-

note omitted)" 235 Pa.Super. at 464, 467, 344 A.2d at 698, 700.

It is true, as appellees contend, that the jury might have found that the decedent was traveling at a rate enabling him to stop within the assured clear distance ahead, and that a sudden emergency rendered the rule inapplicable. However, the jury might also have found that the decedent was traveling at a rate which made it impossible for him to stop within the assured clear distance ahead, as diminished by the glaring sun. These questions should have been decided by the jury under proper instructions from the court. They are not initially a proper consideration for an appellate court. Therefore, a new trial must be granted.

Appellant raises several other alleged errors which purportedly justify a new trial. Because we have concluded that the court's failure to instruct the jury on the assured clear distance ahead rule necessitates a new trial, we need not reach the other issues presented. However, in the interest of judicial economy, we will consider the last issue raised by appellant.

Appellant contends that the lower court erred in excluding evidence of the fact that appellee Evans (decedent's wife) remarried. The record reveals that the trial did not take place until approximately ten years after decedent's death, and that when appellee took the stand, she was so overcome by emotion that she was unable to continue her testimony. Appellant argues that evidence of remarriage should be admissible to rebut the natural sympathy that the jury is likely to feel.

The majority of American jurisdictions considering this question have concluded that evidence of remarriage is inadmissible in a wrongful death action. *Annot.*, 87 ALR2d 252 (1963). Moreover, several federal courts have interpreted a Pennsylvania case, *Philpott v. Pennsylvania R.R.*, 175 Pa. 570, 34 A. 856 (1896), to pro-

218

hibit such evidence. *Haddigan v. Harkins,* 441 F.2d 844 (3d Cir. 1970); *Schuler v. Berger,* 275 F.Supp. 120 (E.D. Pa.1967), *aff'd,* 395 F.2d 212 (3d Cir. 1968); *Gatenby v. Altoona Aviation Corp.,* 259 F.Supp. 573 (W.D.Pa.1966); *Curnow v. West View Park Co.,* 220 F.Supp. 367 (W.D. Pa.1963), *rev'd on other grounds,* 337 F.2d 241 (3d Cir. 1964).

We are persuaded by the majority rule. The fact that remarriage would rebut the living spouse's display of grief is irrelevant because damages are not awarded for the living spouse's emotional deprivations. In addition, remarriage does not necessarily lessen the feelings of sorrow over a loved one's untimely demise. Irrelevant evidence is properly excluded, and the lower court did not err in excluding the evidence in this case.

The order of the lower court is reversed and the case is remanded for a new trial.

VAN der VOORT, J., concurs in the result.