### NATIONAL FREIGHT, INC. and Landis Leasing, Inc.

#### v.

### SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.

#### Civ. A. No. 87–3334.

United States District Court, E.D. Pennsylvania.

Sept. 30, 1988.

---

William R. Hourican, Manta and Welge, Philadelphia, Pa., for plaintiff.

Felix P. Gonzalez, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiffs National Freight, Inc. and Landis Leasing, Inc. (hereinafter collectively "National Freight") commenced this action against defendant Southeastern Pennsylvania Transportation Authority ("SEPTA"), alleging that SEPTA's negligence caused a collision between National Freight's trac-

tor-trailer and SEPTA's commuter train on April 3, 1986, at the River Road Crossing near the Miquon Rail Station, Montgomery County, Pennsylvania. SEPTA filed a counterclaim alleging that the negligence of Mr. Alfred Smith, the driver of National Freight's tractor-trailer, was the cause of the collision. Following a three day trial at which the parties stipulated to damages, the jury returned a verdict finding National Freight 90% at fault for the collision and SEPTA 10% at fault.

National Freight has filed a motion for a new trial on the following two grounds: (1) that the Court erred in precluding the introduction of evidence of previous accidents involving SEPTA commuter trains at the River Road Crossing; and (2) that the Court erred in its jury instructions as to the respective standards of care owed by National Freight and SEPTA. In addition, National Freight has filed a motion for judgment notwithstanding the verdict. For the reasons stated below, this Court will deny National Freight's motions.

### 1. Judgment Notwithstanding the Verdict

■ It is well established that judgment notwithstanding the verdict may be granted only if, as a matter of law, the record is critically deficient of that minimum quality of evidence from which a jury might reasonably afford relief. *Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 206, 209 (3d Cir.1983). In considering such a motion, the Court may not weigh evidence, pass on the credibility of witnesses, or substitute its judgment of facts for that of the jury. *Blair v. Manhattan Life Insurance Co.*, 692 F.2d 296, 300 (3d Cir. 1982). In considering the motion, the court "must expose the evidence to the strongest light favorable to the party against whom the motion is made and give him the advantage of every fair and reasonable inference." *Inventive Music Limited v. Cohen*, 617 F.2d 29, 31 (3d Cir.1980). Based upon a review of the record in the light most favorable to SEPTA, this Court finds that there is sufficient evidence from which a jury could reasonably afford the aforementioned relief.

■ The evidence showed that on April 3, 1986, at approximately 11:30 a.m., a tractor-trailer, driven by an employee of National Freight, approached the River Road rail crossing. At approximately the same time, a two-car SEPTA commuter train was travelling in a northbound direction at 40 m.p.h. between the Shawmont and Miquon train stations. Subsequent to the train leaving the Shawmont station, the SEPTA conductor sounded his whistle on three separate occasions prior to the train reaching the River Road crossing. Moreover, 2137 feet prior to the River Road Crossing (a distance covered by the train in approximately 35 to 39 seconds), the train automatically tripped the warning signal lights at the River Road Crossing. Two sets of rail signals, clearly visible to vehicular traffic at the crossing, flashed a warning of an approaching train. An inspection of the signalling equipment made immediately after the accident revealed that it was fully operational and in working order. The triggering of the crossing signals approximately 35 to 39 seconds prior to the arrival of the train exceeded the minimum industry-wide standard by at least 15 to 19 seconds.

The driver of the National Freight truck, as he approached and reached the River Road crossing had a clear and unobstructed view of the railroad tracks in both directions. The driver, without coming to a complete stop, and never turning his head to observe the track in the direction from which the train was approaching, entered the crossing despite the flashing of the crossing signals. Travelling at approximately three miles per hour, the National Freight truck was struck by the SEPTA commuter train in the River Road Crossing. The driver of the tractor trailer never saw the train or heard any whistles prior to the collision. Based upon the aforementioned evidence, we find that the jury's verdict was reasonably rendered.

### 2. Exclusion of Evidence of Prior Accidents

■ During the course of the trial, plaintiff National Freight sought to introduce

into evidence three prior collisions (occurring on January 13, 1982, February 18, 1984, and November 12, 1985) at the River Road Crossing. Pursuant to Federal Rule of Evidence 403, this Court, after balancing the probative value of and need for the evidence against the harm likely to result from its admission, excluded the evidence of the prior accidents on the ground that its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

It is clearly established that the district court enjoys broad discretion under Rule 403 to exclude relevant evidence which it determines to be confusing, misleading, or unfairly prejudicial to the opposing party. *See Hamling v. United States*, 418 U.S. 87, 124–25, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *United States v. Clifford*, 704 F.2d 86, 89 (3d Cir.1983). Indeed, as the Third Circuit stated in *United States v. Long*:

> It is manifest that the draftsmen intended that the trial judge be given a very substantial discretion in balancing probative value on the one hand and unfair prejudice on the other, and that he should not be reversed simply because the appellate court believes that it would have decided the matter otherwise ...The trial judge, not the appellate judge, is in the best position to assess the extent of the prejudice caused by a piece of evidence.

574 F.2d 761, 767 (3d Cir.), *cert. denied*, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978). Thus, a trial court's rulings under 403 must stand absent a clear showing that the judge abused his discretion. *United States v. Clifford*, 704 F.2d at 89.

■ Evidence of prior *similar* accidents is a proper and significant means of proving both the existence and knowledge of dangerous conditions. *See e.g., Colangelo v. Penn Hills Center, Inc.*, 221 Pa.Super. 381, 292 A.2d 490, 491–92 (1972); *Com., Penn. Dept. of Transp. v. Phillips*, 87 Pa. Cmwlth. 504, 488 A.2d 77, 84 (1985). Indeed, as stated by the Third Circuit in *DiFrischia v. N.Y. Central Railroad Co.*,

Knowledge of the likelihood of injury is imparted by information of *like occurrences under similar circumstances*, and is a fact to be considered by the jury in determining whether proper precautions were taken. (emphasis added). 307 F.2d 473, 476 (3d Cir.1962). The Pennsylvania Supreme Court has explicitly limited the admissibility of evidence of prior accidents to those situations where the accidents "occurred at substantially the same place and under the same or similar circumstances." *Stormer v. Alberts Construction Co.*, 401 Pa. 461, 165 A.2d 87, 89 (1960); *see also Whitman v. Riddell*, 324 Pa.Super. 177, 471 A.2d 521, 523–24 (1984).

■ Irrespective of the specific purpose for which the prior accidents are sought to be introduced, it is clear that there must be a basic similarity of conditions and facts between the prior accidents and the accident in question. *See* 1 J. Weinstein & M. Berger, *Weinstein's Evidence*, Par. 401(10) at 401–66–67 (1988). Thus, courts have uniformly recognized that where the requisite similarity of facts is not present, the probative value of such prior accident evidence will, in most circumstances, be outweighed by its prejudicial or misleading nature. *See e.g., Evans v. Pennsylvania Railroad Company*, 255 F.2d 205, 210 (3d Cir.1958); *Kelsay v. Consolidated Rail Corp.*, 749 F.2d 437, 443–46 (7th Cir.1984); *Gardner v. Southern Railway Systems*, 675 F.2d 949, 952–53 (7th Cir.1982); *Stoler v. Penn Central Transp. Co.*, 583 F.2d 896, 898 (6th Cir.1978); *Callis v. Long Island Railroad*, 372 F.2d 442, 444 (2d Cir.1967); *Jones & Laughlin Steel Corp. v. Matherne*, 348 F.2d 394, 400 (5th Cir.1965); *Payne v. A.O. Smith Corp.*, 99 F.R.D. 534, 537 (S.D.Ohio 1983); *Roundtree v. Seaboard Coast Line R. Co.*, 418 F.Supp. 220, 223 (M.D.Fla.1976).

■ In the instant case, National Freight proceeded to trial against SEPTA on only two theories of negligence: (1) negligent operation of the signalling equipment at the River Road crossing and (2) negligent operation of the train, to wit, unduly excessive rate of speed, inadequate lookout, and failure to properly brake. We note that

inasmuch as the state Public Utility Commission has exclusive authority to design and construct railroad crossings, *see* 66 Pa. C.S.A. § 2702(a) & (c); *National R.R. Passenger Corp. v. Com. of Pa. P.U.C.*, 665 F.Supp. 402, 403 (E.D.Pa.1987), National Freight was precluded from maintaining a defective railroad crossing design cause of action against SEPTA. Accordingly, in order to meet the similarity of conditions standard discussed *supra*, the prior accidents sought to be introduced would have to involve either the negligent operation of the signalling equipment or the negligent operation of the commuter train (to wit, excessive speed, inadequate lookout, or failure to properly brake).

The only materials presented to this Court concerning the prior accidents were the police reports of each of the three accidents and SEPTA's responses to National Freight's request for admissions. Based upon this material and the presentations of counsel, we concluded that the substantial dissimilarities between the present and earlier occurrences tipped the balance against admissibility in light of the confusion and unfair prejudice that would occur if the court admitted the evidence.

First, we note that none of the prior accidents, as reported, involved or implied any negligence in the operation of the signalling equipment at the River Road crossing. Indeed, the evidence on each occasion was that the signals were fully operational and operating prior to the tractor-trailer entering the crossing. Second, we note that in none of the three accidents was there any indication whatsoever of inadequate lookout or failure to properly brake on the part of the train operator. Moreover, as to the November 12, 1985 and February 18, 1984 accidents, there is no indication of the rate of speed of the trains. In the accident of January 13, 1982, the only reference to the rate of speed of the train is reported as being between 20 and 25 mph (the rate of speed testified to be "safe" by plaintiff's expert). Third, we note that in marked contrast to plaintiff's allegation that there was an obstructed view of the train tracks, no such condition was indicated in reference to any of the previous collisions. Fourth, we note that the January 13, 1982 collision was dissimilar to the present collision in that it involved a commuter train operating in a southbound direction. Finally, we note that the three prior accidents occurred over a span of forty five months and that the earliest collision occurred more than four years prior to the instant collision.

This Court further notes that National Freight, notwithstanding this Court's evidentiary ruling, was permitted and, in fact, did introduce expert testimony concerning its allegation that SEPTA negligently operated its commuter train at the River Road crossing. Thus, National Freight was able to introduce evidence supporting its theories of negligence without recourse to the prejudicial introduction of the prior accidents.

### 3. Improper Jury Instructions

National Freight alleges that this Court erred in instructing the jury that the duty of a railroad, such as SEPTA, at its crossings is to exercise ordinary care under the totality of the circumstances. Moreover, National Freight contends that the Court erred in instructing the jury that a motorist approaching a railroad crossing has a duty to stop, look and listen before and while proceeding across the crossing.

The duty of a railroad in Pennsylvania is to exercise ordinary care at a crossing by adopting a reasonably safe and effective method, commensurate with the dangers of a particular crossing, of warning travelers of the approach of the train. *McGlinchey v. Baker*, 356 F.Supp. 1134, 1142 (E.D.Pa. 1973) *citing* 31 P.L.E. Railroads § 163. Based on this law, the Court instructed the jury that SEPTA had a duty to exercise ordinary care viewed in the light of all the surrounding circumstances as shown by the evidence in this case. *See* R. Meyer, *Pa. Vehicle Negligence* § 9.17.

The Pennsylvania Supreme Court, in *Fallon v. Penn Central Transp. Co.*, 444 Pa. 148, 279 A.2d 164 (1971), decided prior to *McGlinchey*, suggested that a railroad may have a special duty of care towards motor-

ists approaching an unguarded crossing with a dangerously limited view of the railroad tracks. In *Fallon*, the driver of the vehicle was struck by a train at an unguarded crossing with a dangerously limited view (stated to be a "few feet") of the railroad tracks. Thus, the only possible warning available to the motorist at the *Fallon* crossing was the sounding of the train whistle. The *Fallon* court upheld the jury verdict for the driver based on evidence that the train, in fact, failed to sound its whistle.

None of the dispositive factors in *Fallon*—an unguarded crossing, a severely restricted view at the crossing, and the failure of the train to sound its whistle—were present in the instant case. Testimony at trial indicated that the crossing was guarded by two sets of fully operational warning signals and that a motorist could gain an unobstructed view of the railroad tracks at the crossing. Moreover, plaintiff's own witness testified that the commuter train sounded its whistle a number of times prior to reaching the crossing. In *McGlinchey v. Baker*, Judge Becker, confronted with circumstances similar to the instant case, refused to charge, on the basis of *Fallon*, that the railroad had a special duty:

> We do not believe that *Fallon* was intended to modify long-settled principles of grade crossing law, and the *Fallon* court gave no indication that it was doing so.

356 F.Supp. at 1143. We conclude that National Freight's request for a "special duty" instruction suggested as appropriate under limited circumstances in *Fallon*, was without merit in the instant case.

■ In Pennsylvania, a motorist must stop, look, and listen before entering a railroad crossing. *Riesberg v. Pittsburgh & Lake Erie Railroad*, 407 Pa. 434, 180 A.2d 575 (1962); *Buchecker v. Reading Co.*, 271 Pa.Super. 35, 412 A.2d 147 (1979). Accordingly, we instructed the jury that the tractor-trailer driver "must stop, must look, and must listen before proceeding into and across a railroad crossing." In addition, we instructed the jury that SEPTA had the burden of proving that Nation-

al Freight's negligence, if any, was the proximate cause of the collision.

None of the limited special circumstances which certain Pennsylvania courts have suggested would permit modification of the stop, look, and listen rule were placed before the jury during trial. *See e.g., Evans v. Reading Company*, 242 Pa.Super. 209, 363 A.2d 1234, 1236 (1976) (sun and foliage preventing motorist from seeing the crossing); *Johnson v. Pennsylvania Railroad Co.*, 399 Pa. 436, 160 A.2d 694 (1960) (lack of an unobstructed view and failure of train to sound whistle); *Buchecker v. Reading Co.*, 412 A.2d at 153 (impossible to observe tracks from safe position); *Fallon v. Penn–Central Transportation Co.*, 279 A.2d at 167 (unobstructed view possible only by placing vehicle into swath of oncoming train and failure of train to sound whistle). As the court noted in *Johnson v. Pennsylvania Railroad Co.*, only the existence of these very limited circumstances warrant a modification of the stop, look and listen rule:

> It will thus be seen that the law recognizes that physical conditions at or near the railroad crossing may so mask the crossing itself that a traveller may not be held to the same measure of care which he is bound to exercise when he has a clear and unobstructed view for a (significant) distance and time to be properly informed of the danger ahead.

160 A.2d at 697. *See also Buchecker v. Reading Co.*, 412 A.2d at 153.

■ In the instant case, however, the plaintiff never alleged that the National Freight driver was unaware of the River Road Crossing. Indeed, the driver testified that he had a clear, unobstructed view of the crossing and that he had come to a complete stop some fifteen feet prior to it. Moreover, the testimony of plaintiff's witness, Mr. Roland Douglas, was that he warned the driver of the presence of the crossing prior to the driver reaching it. Evidence was adduced that the railroad crossing had two sets of warning signals which started flashing approximately 35 to 39 seconds prior to the arrival of the train. Evidence was also adduced that the com-

80

muter train sounded its whistle on a number of occasions prior to its reaching the crossing. The record was bereft of any evidence that the driver had to place his tractor-trailer into the swath of the oncoming train or other dangerous position in order to gain an adequate view of the track in both directions. Indeed, the plaintiff testified that he did, in fact, come to a complete stop and viewed the track in both directions prior to entering the crossing. Under these circumstances, the jury was properly charged with the duty of determining whether the tractor-trailer driver did, in fact, stop, look and listen and whether, if he did not, that failure was a proximate cause of the collision. *See* R. Meyer, *Pa. Vehicle Negligence* §§ 9.16 & 21.40; 75 Pa.C.S.A. §§ 3341 & 3342. We conclude that National Freight's request that this Court reject the stop, look and listen rule under Pennsylvania law was without merit in this case.

For the reasons stated, this court will deny National Freight's motions for a new trial and judgment notwithstanding the verdict.